William MALLORY, et al., Plaintiffs,

v.

George C. EYRICH, et al., Defendants.

Civ. No. C-1-86-1056.

United States District Court,
S.D. Ohio, W.D.

Aug. 14, 1987.

Thomas Atkins, Brooklyn, N.Y., James Hardiman, Cleveland, Ohio, Peter Randolph, Theodore Berry, Cincinnati, Ohio, for plaintiffs.

James Harper, Cincinnati, Ohio, Andrew Sutter, Columbus, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on a motion by Defendants for Summary Judgment, and upon memoranda filed thereon by both sides. In addition a hearing was held in open court on July 24, 1987. Plaintiffs have brought an action seeking a determination that the current method of electing judges to the Municipal Court of Hamilton County violates 42 U.S.C. § 1973 known as the 1965 Voting Rights Act as amended. In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its Findings of Fact, Opinion and Conclusions of Law.

## I. FINDINGS OF FACT

1. The judicial power in the state of Ohio is contained in Article Four of the Constitution of Ohio. Paragraph One of such article provides: "The judicial power of the state is vested in a Supreme Court, Courts

of Appeals, Courts of Common Pleas and divisions thereof and such other Courts inferior to the Supreme Court as may from time to time be established by law." This section, in effect, establishes what may be termed "Constitutional Courts" and "Legislative Courts".

Pursuant to the above power vested in the General Assembly of Ohio, "Municipal Courts" have been established. Ohio Revised Code 1901.01 provides in part as follows: "There is hereby established a Municipal Court in each of the following Municipal Corporations ... Cincinnati...." The General Assembly of Ohio further provided for the territorial jurisdiction of such courts. Ohio Revised Code 1901.02 provides in part as follows: "The Municipal Court established in Cincinnati which shall be styled and known as the 'Hamilton County Municipal Court' ... The Municipal Courts also have jurisdiction as follows: ... The Hamilton County Municipal Court has jurisdiction within Hamilton County ...".

The General Assembly of Ohio further provided for the term of offices of Judges of such Courts. Ohio Revised Code 1901.-07 provides in part as follows: "In the Hamilton County Municipal Court the Judges shall be nominated only by petition. The petition shall be signed by at least 1000 electors of the territory within the jurisdiction of the Court which position shall be signed, verified and filed in the manner and within the time required by law for nominating petitions for members of council for the city of Cincinnati. *The judges shall be elected by the electors of the territory within the jurisdiction of the court* at the regular municipal election and in the manner provided by law for the election of judges of the Court of Common Pleas ...". (Emphasis added)

2. Prior to the adoption of the above statutes there existed a "Municipal Court of Cincinnati" the territorial jurisdiction of which was limited by the geographical limitations of the city of Cincinnati.[1]

3. While blacks have been appointed by the Governor of Ohio to the Municipal Court serving the city of Cincinnati no blacks have ever been elected with but one exception. In 1983 by agreement of the political parties, Jack Sherman, nominated by the Democratic Party, and Barry Issacs, nominated by the Republican Party, ran unopposed for positions on the Municipal Court of Hamilton County and were elected. No black has ever been elected to the Common Pleas Court of Hamilton County Ohio, although, in at least two instances blacks were appointed by the Governor.[2] No black has ever been elected to the Court of Appeals serving Hamilton County and only two blacks have ever served on the Supreme Court of Ohio. According to the 1980 census the black population of the City of Cincinnati constitutes 33.85% and the black population of Hamilton County constitutes 19.01%.

4. Section 2 of the Voting Rights Act of 1965 (42 U.S.C. 1973) provides in part as follows: "(a) no voting qualification or prerequisite to voting ... shall be imposed ... by any state or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color ...

(b) a violation of subsection (a) of this section is established if based on the totality of circumstances it is shown that the political processes leading to nomination or election in the state or political subdivision are not equally open to participation by members of a class of citizens, protected by subsection (a) of this section, in that its members have less opportunity than other

---

**1.** Other courts created by the General Assembly of Ohio with jurisdiction limited to the city of Cincinnati have existed in the past. For example, between the years 1854 to 1921 there was a court known as the Superior Court of Cincinnati which was a Court of general jurisdiction within the city.

**2.** In 1975 William McClain was appointed to the Common Pleas Court by Governor James Rhodes. He ran in the general election of 1976 and was defeated. In 1987 Jack Sherman was appointed to the Common Pleas Court of Hamilton County Ohio by Governor Richard Celeste. Judge Sherman will run for election in 1988.

members of the electorate to participate in the political process *and to elect representatives of their choice* (emphasis added).

## II. OPINION

The critical question for determination by this court is whether or not Section 2 and the right "to elect representatives of their choice" includes the office of judge. By way of background it should be pointed out that section 2 of the Voting Rights Act was amended following *City of Mobile Alabama v. Bolden,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980), in which the Supreme Court held that in order to establish a violation of section 2 of the Voting Right Act, minority voters must prove the contested electoral mechanism was intentionally adopted or maintained for a discriminatory purpose. The "discriminatory purpose" test was abolished by Congress and the obvious intention of the amendment was to allow proof of a discriminatory effect or result alone. As recently as *Thornburg v. Gingles,* —— U.S. ——, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) the Supreme Court of the United States determined "that it was the purpose of the amendment 'to make clear that a violation of Section Two could be proved by showing discriminatory effect alone rather than having to show discriminatory purpose and to establish as the relevant legal standard the (result test).' "

■ In terms of "results", the election of only two blacks to the Municipal Court of Hamilton County Ohio and the election of no blacks to the Common Pleas Court of Hamilton County Ohio is sufficient evidence to make a "results" determination in favor of plaintiffs.

■ The question however of whether Section 2 applies to judges is a more difficult inquiry. There is currently no guidance either in this circuit or in any other circuit on this issue. Two other District Courts have also dealt with this problem [3] and while they have come to opposite results both recognized the lack of any appellate determination. Neither of such Courts however are within the Sixth Circuit and while a determination of the appropriate Court of Appeals might be persuasive, it would be that only.

There is a conceptual difference between the role of legislatures and executives and the role of judges. Both legislatures and executives are intended under the Constitution of the United States and the Constitution of Ohio to be "representative". The power to legislate and the power to administer should only be performed in accordance with the wishes of the populace. At stated times the actions of legislators and the executives are reviewed and franchised members of society make a new selection.

The distinction between a representative legislature and a court was noted as far back as an essay by Hamilton in the Federalist No. 78. Legislatures and judges simply perform different functions.[4] Only judges may either be elected or appointed. The notion of an appointed legislature or an appointed executive would be impossible in a democratic society. A non representative legislative or executive is a contradiction in terms. An appointed judge, however, is not a contraction in terms. In accordance with Article III of the U.S. constitution every United States Judge is appointed and in varying degrees so are Judges in many states. If it is judges who can be elected or appointed, but legislatures and executives who can only be elected, there must be an inherent difference in their functions. Blacks Law Dictionary has pointed out that judges, by definition, do not represent voters, but are "appointed or elected to preside and administer the law." In *Buchanan v. Rhodes,* 249 F.Supp. 860, (1966) then Chief Judge Connell of the Northern District of Ohio point-

**3.** *Chisom v. Edwards,* Case No. 86–4075 (E.D. Louisiana 1987); *Martin v. Allain,* 658 F.Supp. 1183 (S.D.Mississippi 1987).

**4.** A persuasive distinction between the functions of courts and legislatures was made in *Stokes v. Fortson,* 234 F.Supp. 575 (N.D.Ga.1964) "manifestly, judges and prosecutors are not representatives in the same sense as are legislators or the executive. Their function is to administer the law, not to espouse the cause of a particular constituency ..."

ed out "we must recognize one glaring distinction between the functions of legislators and the function of jurists, judges do not represent people, they serve people". (Supra at 865) In *New York State Association of Trial Lawyers v. Rockefeller*, 267 F.Supp. 148 (S.D.N.Y.1967), the statement is made that "the state judiciary unlike the legislature is not the organ responsible for achieving representative government".

A moments reflection will demonstrate this inherent difference. A black or white legislator elected to represent the interests of his constituency is expected by that constituency to act at all times in accordance with its wishes. If he did not he might be violating his trust. He is their representative. To translate that concept to black and to white judges would reduce the judicial system to chaos. No one can seriously assert that white litigants should fare better before a white elected judge and black litigants fare better under a black elected judge. As Jefferson pointed out there should be "equal and exact justice to all men of whatever state or persuasion, religious or political". To refer to a "partisan legislator" may be mark of approval; to refer to a "partisan judge" is a mark of condemnation and one which removes him completely from the role of an unbiased arbiter of societal conflicts.

While plaintiffs have sought to avoid the logical extension of their proposition, it must be obvious that their wishes can only be achieved by geographical divisions within the Municipal Court of Hamilton County. Someone and, in this instance, a United States judge must carve out from the territorial jurisdiction of the Municipal Court a district or districts wherein blacks are assured of election. That act of carving necessarily will leave a remainder of jurisdictional territory from which blacks will be effectively excluded and perhaps create precisely the situation that the 1965 Voting Act was intended to prevent. Would such a plan require a constant monitoring by the federal courts and a further carving of districts or consolidation of districts as the black population increased or decreased in Hamilton County? Would the plaintiffs

have this Court perform what is essentially a legislative function?

An additional ramification of plaintiffs' proposal is the recognition that if there is validity in plaintiffs' position as to the Municipal Court of Hamilton County, Ohio there is equal validity for such position in regards of the Common Pleas Court of Hamilton County, Ohio. That court has multiple judges, there has been a total inability to elect a black and there is the same substantial population of blacks in Hamilton County for purposes of the Common Pleas Court as there is for purposes of the Municipal Court.

There is, of course, a distinction. The Court of Common Pleas was created by the Constitution of Ohio as above mentioned and the Municipal Court of Hamilton County was created by the General Assembly of Ohio. If there is power in the United States District Court to deal with the Municipal Court of Hamilton County it must follow that there is equal power in interpreting the Voting Rights Act to deal with the Common Pleas Court. Indeed there would appear no logical reason for any limitation upon that power. It could likewise be extended to a consideration of the Courts of Appeal and of the Supreme Court of Ohio.

Assuming that plaintiff's proposal has validity there is literally no court in the state of Ohio that would not be subject to territorial division imposed by a United States District Court. This is not only a *reductio ad absurdum* but it is contrary to the decision of a three judge district court composed of Circuit Judge Weick and District Judges Battisti and Thomas who held in *Buchanan v. Gilligan*, 349 F.Supp. 569 (N.D.Ohio 1972) that "the State judiciary is not responsible for achieving representative government and the population is not the most relevant criterion for determining the distribution of state judges". To that view this Court adds the following corollary "neither are the Federal Courts".

The Court has thus far devoted its consideration to the Voting Rights Act of 1965. As an alternate basis for relief plaintiffs have suggested that there has been a violation of equal protection under the

Fourteenth Amendment. This is not a viable alternative basis of jurisdiction. The question of determining the number of judges for the Municipal Court of Hamilton County has already been disposed of by the United States Court of Appeals for the Sixth Circuit in the case of *Gilday v. The Board of Election of Hamilton County*, 472 F.2d 214. The specific language of that court may be found at page 217 as follows: "We agree with the district court that just as it [the legislature] adjusts territory and jurisdiction, it may without patently evidencing the reason and without being compelled to explain, adjust the factor of number of judges without running afoul of the Equal Protection Clause in either instance."

The totality, therefore, of this Court's view is that it is not the appropriate forum for determining what is essentially a legislative consideration. Accordingly, the motion for Summary Judgment should be and it is hereby GRANTED.

### III. CONCLUSION OF LAW

A. This Court has jurisdiction pursuant to the Voting Rights Act of 1965 (42 U.S.C. § 1973 et seq.)

B. The General Assembly of Ohio has authority to create municipal courts, provide for their jurisdiction and the manner of electing judges (Ohio Revised Code 1901.01, 1901.02 and 1901.07.

C. The provisions of Section 2 of the Voting Rights Act of 1965, is limited to a right to "elect representatives of their choice". A person performing a judicial function is not a representative of anyone. *Buchanan v. Rhodes*, 249 F.Supp. 860.

D. It is not a function of the Federal Courts to carve a Municipal Court into judicial districts based upon the population mixture of whites and blacks.

E. Based upon conclusions of law B, C, and D the motion for Summary Judgment of defendants is hereby granted.

IT IS SO ORDERED.