William MALLORY; Arthur Primus; Vera Johnson; Charles Collins, II; Mary Ann Randolph, Plaintiffs–Appellants,

v.

George C. EYRICH, John H. Hermanies, John A. Wiethe, and Don Driehaus, County Defendants–Appellees,

Richard Celeste, Governor, et al., State Defendants,

Hamilton County Municipal Court Judges, et al., Intervening Defendants.

No. 90–3558.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 28, 1990.

Decided Jan. 10, 1991.

Theodore M. Berry, Tobias & Kraus, Peter J. Randolph, Cincinnati, Ohio, Thomas I. Atkins (argued), Brooklyn, N.Y., James L. Hardiman, Hardiman, Alexander, Buchanan & Howland, Cleveland, Ohio, Margrett Ford, Brooklyn, N.Y., for plaintiffs-appellants.

James W. Harper, Asst. Pros. Atty. (argued), Pros. Atty.'s Office for County of Hamilton, Cincinnati, Ohio, for County defendants-appellees.

Andrew I. Sutter, Asst. Atty. Gen., Office of the Atty. Gen. of Ohio, Columbus, Ohio, for State defendants.

Carl J. Stich, Jr., Dinsmore & Shohl, Cincinnati, Ohio, for intervening defendants.

Before WELLFORD, Circuit Judge, LIVELY, Senior Circuit Judge, and McRAE[*], Senior District Judge.

LIVELY, Senior Circuit Judge.

This appeal seeks reversal of a district court order, entered pursuant to Fed.R. Civ.P. 60(b)(6), which set aside a judgment previously entered in the case pursuant to Fed.R.Civ.P. 68. We agree with the plaintiffs that the district court erred, and we reverse.

## I.

### A.

The underlying action was filed in the district court in 1986 by a group of black residents of Hamilton County, Ohio, challenging the at-large, county-wide scheme on which the election of Hamilton County Municipal Court judges is based. The plaintiffs asserted various claims under the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973. The defendants are the Chairman and members of the Hamilton County Board of Elections (county defendants) and the Governor and Secretary of State of Ohio (state defendants).

The parties filed cross-motions for summary judgment on the issue of the applicability of section 2 of the Voting Rights Act to judicial elections. Following briefing and a hearing, the district court agreed with the defendants that section 2 does not apply to judicial elections and, accordingly, entered summary judgment for the defendants. *Mallory v. Eyrich,* 666 F.Supp. 1060 (S.D.Ohio 1987). On appeal, this court reversed the judgment of the district court, holding that section 2 of the Voting Rights Act does apply to election of judges of the Hamilton County Municipal Court. *Mallory v. Eyrich,* 839 F.2d 275 (6th Cir.1988).

### B.

Following remand and further discovery, the district court set a final pretrial conference date. Immediately prior to that conference the state defendants submitted an offer of judgment pursuant to Rule 68, and the plaintiffs accepted the offer. Shortly thereafter the county defendants submitted a similar offer of judgment, also pursuant to Rule 68, and the plaintiffs accepted that offer as well. The clerk of the district court entered separate judgments for the plaintiffs.

The county defendants' offer of judgment, after reciting proceedings of the Board of Elections, provided as follows:

1. ... the defendant Hamilton County Board of Elections offers Judgment to the plaintiffs on their claim that the statutory procedure by which multiple judicial positions on the Hamilton County Municipal Court are filled through county-wide single judicial district elections,

---

[*] The Honorable Robert M. McRae, Senior Judge, United States District Court for the Western District of Tennessee, sitting by designation.

violates the provisions of the Voting Rights Act of 1965, as amended. 42 U.S.C. Section 1973 et seq.

2. This offer does not admit liability on any other claims raised by the plaintiffs.

3. This offer extends only to the liability phase of this case and should not be construed as a limitation upon the right of the County Defendants to fully participate during any remedial stage of this case.

Following receipt of the plaintiffs' acceptance, on September 15, 1989, the clerk entered judgment for the plaintiffs on the "Complaint challenging O.R.C. [Ohio Revised Code] 1908 as violative of Section 2 of the 1965 Voting Rights Act, 42 U.S.C. 1973, as amended."

After the General Assembly of Ohio failed to address the issue raised by this case, the district court, without conducting a hearing, entered a remedial order on March 30, 1990. This order appointed a special master and instructed the master to divide Hamilton County geographically into fourteen equal judicial districts, three of which were to have a black population of at least 51%. On the same date, the district court, again without a hearing, granted intervention of right to the sitting Hamilton County Municipal Court judges.

The county defendants and the intervening judges appealed the remedy order and the plaintiffs appealed the order granting intervention of right to the judges. In an unpublished order, this court dismissed both appeals as premature.

### C.

On April 4, 1990, the county defendants filed a pleading in the district court styled "Defendant Board's Request for Relief from Judgment Rule 60(b)(6)." In an accompanying memorandum the county defendants stated that the Board of Elections had adopted a resolution to withdraw its previous offer of judgment. The only ground stated for granting relief from the previously entered Rule 68 judgment was that "the issues raised by this case should be the subject of a decision on a fully developed record."

The district court entered an order giving the plaintiffs an opportunity to show cause in writing why it should not grant the county defendants' request for relief from judgment. Following receipt of the plaintiffs' response, in which they raised the issues now relied upon for reversal, the district court granted the county defendants' motion, stating "the Court determines that the Judgment entered on September 15, 1989, should be and it is hereby set aside as to the Defendant Board of Elections of Hamilton County, Ohio, and such Defendant may participate in all future proceedings in this case." The plaintiffs filed a timely notice of appeal, and this court assigned an expedited briefing schedule. Following oral argument on November 28, 1990, the appeal was submitted for decision.

### II.

The state defendants did not seek relief from the Rule 68 judgment entered against them and are not parties to this appeal. Thus, all references in this opinion to the defendants include only the county defendants.

### A.

█ The defendants have raised a jurisdictional issue, which we will address first. They argue that the order granting relief from the Rule 68 judgment was not a final appealable order and that this court has no jurisdiction to entertain this appeal. They contend that because the Rule 68 judgment resolved only the claim of liability under the Voting Rights Act and left unresolved the claims of constitutional violations and all issues related to remedy, it lacked finality. Thus it was subject to modification or rescission by the district court at any time before entry of a judgment disposing of all the issues in the case.

The defendants maintain that the judgment did not meet the finality requirement of 28 U.S.C. § 1291 (to be final and appealable, an order must resolve all the issues on the merits leaving nothing to be done

but to execute a judgment, *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)) and was not such an interlocutory order as may be appealed under 28 U.S.C. § 1292. Finally, the judgment was not accompanied by a certificate pursuant to Fed.R.Civ.P. 54(b) that the district court found no just reason for delay and directing entry of judgment.

Of course, the issue is not whether the Rule 68 judgment is appealable—no one sought to appeal it—but whether the order entered pursuant to Rule 60(b)(6) setting aside the judgment is appealable. The law is settled that a ruling on a Rule 60(b) motion may be appealed under Fed.R. App.P. 4(a). *Browder v. Director, Illinois Dept. of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); *Honneus v. Donovan,* 691 F.2d 1, 2 (1st Cir.1982). The defendants argue that this rule only applies when a Rule 60(b) motion seeks relief from a final judgment, and that since the Rule 68 judgment in the present case was not final, the order granting relief from that judgment also lacks finality.

This argument overlooks several important facts. First, the defendants relied solely on Rule 60(b)(6) in seeking relief from the September 15 Rule 68 judgment. Thus, they treated the judgment as final. This is so because, by its terms, Rule 60(b) applies only to final judgments. The rule provides, "On motion and upon such terms as are just, the court may relieve a party ... from a *final judgment,* order, or proceeding ..." (emphasis added). Second, the district court specifically relied on Rule 60(b)(6) in its order setting the September 15 judgment aside. Thus, whether or not the Rule 68 judgment was final under the section 1291 definition in *Coopers & Lybrand v. Livesay,* the parties and the court treated it as final and the court proceeded under Rule 60(b)(6) to enter an order that is ordinarily appealable. We do not rest our decision, however, on these assumptions entertained by the parties and the district court. There are more fundamental reasons, related to the nature of a Rule 68 judgment, that make a Rule 60(b) order

setting aside such a judgment immediately appealable.

**B.**

Rule 68, as pertinent here, provides:

**Rule 68. Offer of Judgment**

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

■ The primary purpose of Rule 68 is to encourage the compromise and settlement of litigation. *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981); *Marek v. Chesny,* 473 U.S. 1, 5, 105 S.Ct. 3012, 3014, 87 L.Ed.2d 1 (1985). By encouraging compromise, Rule 68 discourages both protracted litigation and vexatious law suits. 12 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3001 (1973). "The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Marek* at 5, 105 S.Ct. at 3014.

■ Rule 68 has several unique features that distinguish it from other means of compromise and settlement in civil litigation. The primary distinction is its cost-shifting provision. Under the rule, a party defending against a claim may offer to have judgment of liability entered against it. If the adverse party rejects the offer of judgment, and if "the judgment finally ob-

tained by the offeree is not more favorable than the offer," the offeree must pay the costs incurred after the offer was made. This provision in essence shifts the risk of going forward with a lawsuit to the complainant, who becomes exposed to the prospect of being saddled with the substantial expense of trial. As this court has stated:

> The rule encourages settlement by exposing plaintiffs to the possible award of costs should plaintiffs err in the evaluation of their cases. The possibility of substantial cost awards is the sword which encourages plaintiffs to settle.

*Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 295 (6th Cir.1989).

*Marek v. Chesny,* supra, has exposed civil rights plaintiffs to an additional risk in rejecting a Rule 68 offer. In the absence of a Rule 68 offer, the prevailing party in a civil rights action is entitled to an award of attorney fees under 42 U.S.C. § 1988. Yet under *Marek,* Rule 68 "costs" have been construed to include all costs that may be awarded under the relevant substantive statute:

> [T]he most reasonable inference is that the term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 "costs." Thus, absent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68 (citations omitted).... Since Congress expressly included attorney's fees as "costs" available to a plaintiff in a § 1983 suit, such fees are subject to the cost-shifting provision of Rule 68.

*Id.* at 9, 105 S.Ct. at 3016. Therefore, as was the case in *Marek,* if the plaintiff in a civil rights action under § 1983 rejects an offer of judgment under Rule 68, proceeds to trial and wins a judgment less favorable than the offer, the defendant is not liable for the plaintiff's attorney fees, even though § 1988 awards to the prevailing party attorney fees as a part of costs.

The rule announced in *Marek* becomes relevant to this case because under 42 U.S.C. § 1973*l* (e), attorney fees are included as "costs," as they are under § 1988. As a result, the plaintiffs in this case faced an additional risk if they had rejected the defendants' offer of judgment: by rejecting the offer and then subsequently prevailing but somehow receiving a "less favorable" judgment at trial, they would have been required to bear their own attorney fees; fees to which they would have been entitled absent the Rule 68 offer. Therefore, *Marek* provided an additional significant inducement for the plaintiffs to accept the offer of judgment made by the defendants in this case.

■ A second distinct feature of Rule 68 is the lack of discretion that it leaves the district court judge in its implementation. This lack of discretion is particularly true in cases in which the offer of judgment has been rejected and the subsequent award to the plaintiff is less favorable than the offer. In these cases, the district court *must* award costs to the offeror. This court has so ruled in *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291 (6th Cir.1989):

> The district court retains no discretion under Rule 68 to alter the rule's sometimes severe application. Operation of Rule 68 is mandatory.

Although the district court normally has discretion [under Fed.R.Civ.P. 54(d) ] as to whether to award costs to the prevailing party, where a Rule 68 offer is made and the judgment finally obtained by the plaintiff is not more favorable than the offer, he *must* pay the costs incurred after the asking of the offer. This language is mandatory; where the rule operates, it leaves no room for district court discretion.

*Hopper* at 295, quoting in part *Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 442 (9th Cir.1982) (emphasis in original); in accord is *Johnston v. Penrod Drilling Co.,* 803 F.2d 867 (5th Cir.1986).

■ In addition to the mandatory nature of the rule in the award of costs to the

offeror, Rule 68 also leaves no discretion in the district court to do anything but enter judgment once an offer has been accepted. By directing that the clerk *shall* enter judgment after proof of offer and acceptance have been filed, the explicit language of the rule signifies that the district court possesses no discretion to alter or modify the parties' agreement. The Sixth Circuit has indicated that the entry of a Rule 68 judgment is ministerial rather than discretionary:

> We agree with the plaintiffs that the clerk was required to enter judgment [under Rule 68].... The clerk refused to enter judgment because the parties had not resolved their dispute on whether "costs" included attorney's fees. However, Rule 68 does not condition entry of judgment on the resolution of all issues. It explicitly states, "the clerk *shall* enter judgment." (Emphasis added.) Because the court clerk failed to perform the ministerial act of entering judgment, the court should have entered judgment *nunc pro tunc.*

*Oates v. Oates,* 866 F.2d 203, 208 (6th Cir.), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1025 (1989).

■ From the foregoing it appears that Rule 68 judgments are self-executing. Unlike imposed judgments and ordinary consent judgments, once the parties agree on the terms of a Rule 68 judgment, the court has no discretion to withhold its entry or otherwise to frustrate the agreement. Therefore, contrary to the contentions of the defendants, a Rule 68 judgment inherently possesses a significant degree of finality because of the absence of court discretion in its implementation. Its finality is also indicated by the fact that a Rule 68 judgment results from a binding contract, as we discuss more fully in Part III of this opinion. Based on these considerations, we conclude that the appealability of the Rule 60(b) order is not affected by a claimed lack of finality in the Rule 68 judgment.

■ Further, even assuming that a Rule 68 judgment does not satisfy the finality requirements of 28 U.S.C. § 1291, when a party has obtained relief from such a judg-

ment pursuant to Rule 60(b), we have jurisdiction to review the order granting such relief under the Supreme Court's *"Gillespie* doctrine." *Gillespie v. United States,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). We described this doctrine of "marginal" finality in *In re Vause,* 886 F.2d 794, 798 (6th Cir.1989).

> In certain close cases where finality cannot be conclusively resolved, the "danger of denying justice by delay" outweighs "the inconvenience and costs of piecemeal review," particularly when the questions on appeal are "fundamental to the further outcome of the case." *Id.* [*Gillespie*] at 152–54, 85 S.Ct. at 310–12. "The *Gillespie* doctrine, therefore, permits the courts of appeals to decide the merits in cases of marginal finality where the course of litigation would be impeded, rather than advanced, by dismissing the appeal." *In re Exennium* [*In re Exennium,* 715 F.2d 1401 (9th Cir.1983)] 715 F.2d at 1402–03 (citations omitted).

### III.

■ Having concluded that the Rule 60(b)(6) order granting relief from the Rule 68 judgment is immediately appealable, we turn to the issue of the propriety of that order in this case. Our standard of review is abuse of discretion, as Rule 60(b) makes the district court's response to a motion for relief from judgment discretionary.

### A.

■ In cases construing Rule 68 judgments where the parties disagree as to what was intended, the courts apply contract principles. See for example, *Radecki v. Amoco Oil Co.,* 858 F.2d 397, 400 (8th Cir.1988) ("[t]o decide whether there has been a valid offer and acceptance for the purposes of Rule 68, courts apply the principles of contract law"); *Johnson v. Univ. College of the Univ. of Alabama,* 706 F.2d 1205, 1209 (11th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983) (for a valid Rule 68 agreement to have been formed, there must be a "meeting of the minds" under elementary princi-

ples of contract law). If contract principles apply to the formation of a Rule 68 agreement, as many courts have concluded, it would logically follow that only traditional contract defenses could be used to extricate a party from an otherwise binding agreement. In the present case, there are no circumstances which would permit the defendants to invoke a traditional contract defense to the valid Rule 68 contract.

A Rule 68 judgment is a consent judgment of a particular kind. Its unique characteristics—a cost-shifting provision and absence of court discretion in implementation—make such a judgment less amenable to change or abrogation than an ordinary consent judgment. Yet, it is clear that a court has very limited authority to alter the terms of any consent judgment. "In general, a party will not be granted relief from a consent judgment; but the facts and circumstances of a particular case may, however, warrant relief therefrom." 7 J. MOORE & J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 60.19 (2d ed. 1990). The only "facts and circumstances" that this court has ruled warrant relief from a consent judgment are some showing of the existence of fraud or a mutual mistake of fact. *Brown v. County of Genessee*, 872 F.2d 169, 174–75 (6th Cir.1989); *Estate of Jones v. C.I.R.*, 795 F.2d 566, 573–74 (6th Cir.1986). And in upholding the district court's denial of a motion to set aside a consent decree agreed to by the litigants but subsequently contested by one party on the basis of a change of mind, this court held that absent fraud, mutual mistake, or lack of authorization by counsel, a valid consent decree will not be disturbed. *Allinsmith v. Funke*, 421 F.2d 1350, 1351 (6th Cir.1970).

Rule 60(b) has six sub-parts. It is significant that the defendants sought relief under Rule 60(b)(6), not under 60(b)(1) (mistake) or 60(b)(3) (fraud). Rule 60(b)(6) authorizes a court to grant relief from a final judgment for "any other reason justifying relief from the operation of a judgment." This court discussed the limitations of Rule 60(b)(6) at length in a recent opinion by Judge Wellford. After discussing Rule 60(a) and several sub-parts of Rule 60(b), the court stated:

We pass finally to consideration of the remaining subsection of Rule 60(b) which provides for the correction of a judgment "for any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). We have held that Rule 60(b)(6) should apply "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir.1989) (citing *Pierce v. United Mine Workers*, 770 F.2d 449, 451 (6th Cir.1985), *cert. denied*, 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986); *see also Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); *United States v. Karahalias*, 205 F.2d 331, 333 (2d Cir. 1953) (holding that Rule 60(b)(6) may be used to grant relief in case of extreme and undue hardship). Courts, however, must apply subsection (b)(6) only "as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Hopper*, 867 F.2d at 294; *see also [In re] Emergency Beacon Corp.*, 666 F.2d [754] at 758 [2nd Cir.1981].

*Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990).

After further discussion of Rule 60(b)(6) issues not pertinent to the present case, the court stated:

Recently, the Supreme Court has spoken on Rule 60(b)(6) requirements clarifying language from an earlier decision on the subject:

Rule 60(b)(6), upon which respondent relies, grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just," provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judg-

ments whenever such action is appropriate to accomplish justice," *Klapprott v. United States*, 335 U.S. 601, 614–615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), while also cautioning that it should only be applied in "extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

*Liljeberg* [*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)], *supra* (footnote omitted). Footnote 11 of *Liljeberg* discusses *Klapprott* in further detail:

> In *Klapprott v. United States*, 335 U.S. 601, 613 [69 S.Ct. 384, 389, 93 L.Ed. 266] (1949), we held that a party may "not avail himself of the broad 'any other reason' clause of 60(b)" if his motion is based on grounds specified in clause (1)—"mistake, inadvertence, surprise or excusable neglect." Rather, "extraordinary circumstances" are required to bring the motion within the "other reason" language and to prevent clause (6) from being used to circumvent the 1–year limitations period that applies to clause (1). This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive. See 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864 (1973).

*Id.*, [486 U.S. at 863 n. 11, 108 S.Ct. at 2204 n. 11].

*Olle v. Henry & Wright*, 910 F.2d at 366.

■ We believe it is clear from the foregoing that the defendants did not present a valid basis for relief from judgment under Rule 60(b)(6). While the defendants contend that relief from judgment should be granted because of changes in the composition or the political makeup of the Board of Elections and because justice would be better served if the Voting Rights Act issue were adjudicated on the merits, these reasons simply do not present the exceptional circumstances that are required for Rule 60(b)(6) relief. Thus, the district court abused its discretion in setting aside the September 15 judgment finding that the county defendants had violated section 2 of the Voting Rights Act. Furthermore, the district court decided the issue without conducting a hearing. A Rule 68 judgment should not be set aside on the motion of one party without giving all other parties affected by the motion an opportunity to be heard at a properly noticed hearing.

## IV.

### A.

■ We take judicial notice of several developments in this case since this particular appeal was commenced on June 15, 1990 (there have been approximately a half-dozen interlocutory appeals in this hotly-contested case).

The district court set a hearing to commence on June 25, 1990, inviting counsel to present evidence "[w]ithout limitations upon the matters to be presented by counsel." It appeared on its face that this order contemplated a hearing on liability as well as remedy. (The district court apparently had withdrawn its previous remedy order appointing a special master who was directed to create fourteen judicial districts.) On June 21 the plaintiffs filed a motion for the presiding judge to recuse himself.

The hearing commenced on June 25 and on June 28 the district court denied the plaintiffs' motion to reconsider an evidentiary ruling, or to reschedule the hearing. On July 2 the plaintiffs filed an emergency petition for a writ of mandamus or prohibition requesting, among other things, that the district judge be required to recuse himself or at least hold a hearing on the recusal motion. This court denied mandamus and prohibition in an unpublished order, but concluded that the notice of appeal in the present case had divested the district court of jurisdiction to conduct further proceedings. Accordingly, we extended a previously entered stay of proceedings in the district court until further orders of this court in the present appeal.

Following entry of our unpublished order staying the district court, Judge Rubin, to

whom the case was originally assigned and who conducted all prior proceedings, entered an order on July 26 "reassigning the case to Chief Judge John D. Holschuh of the United States District Court for the Southern District of Ohio," presumably for the purpose of assignment to a different judge. Even though unusual in form, the purpose of this order appears to effect Judge Rubin's withdrawal from the case. Thus, the motion for recusal is now moot, as all future proceedings will be conducted by the district judge to whom the case is assigned, either by Chief Judge Holschuh or by the Chief Judge of the Sixth Circuit.

## B.

As has been noted, the district court granted intervention of right to the Hamilton County Municipal court judges without conducting a hearing or giving the plaintiffs an opportunity to object. The plaintiffs attempted to appeal the intervention order, but this court concluded that the order was interlocutory and not immediately appealable. District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. *Marconi Wireless Telegraph Co. v. United States,* 320 U.S. 1, 47–48, 63 S.Ct. 1393, 1414–1418, 87 L.Ed. 1731 (1943). A district court may modify, or even rescind, such interlocutory orders. *Simmons Co. v. Grier Brothers Co.,* 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475 (1922). If the plaintiffs should seek reconsideration of the order granting intervention, the district court has authority to reexamine the question of intervention of right, hold whatever hearings it deems advisable, and redetermine the issue in light of its findings and conclusions.

The plaintiffs also complain that the district court denied their motion for class action certification, even though the defendants did not oppose certification. It seems that any benefit to the plaintiffs in this particular case would be identical whether or not a class is certified. Nevertheless, an order denying class certification "may be altered or amended before the decision on the merits." Fed.R.Civ.P.

23(c)(1). The Supreme Court has stated that because class status under this rule may always be altered or amended, "a district court's order denying or granting class status is inherently tentative." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 11, 98 S.Ct. 2454, 2458 n. 11, 57 L.Ed.2d 351 (1978). In a later opinion, the Supreme Court stated that "[e]ven after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Thus, the plaintiffs are free to renew their motion for class certification before the district court on remand.

## C.

We have dealt with several matters involving the appeal but not directly related to the principal issue in the hope that, following remand, this case will move to a prompt determination on the merits. This is a case in which the eventual cost to the parties and the district court, in time and resources expended, will be less "if we now pass on the questions presented here rather than send the case back with those issues undecided." *Gillespie,* 379 U.S. at 153, 85 S.Ct. at 311.

The Rule 60(b)(6) order appealed from is reversed and the September 15, 1989, judgment entered pursuant to Rule 68 is reinstated. The plaintiffs will recover their costs on this appeal.

The previously granted stay is lifted. Upon remand the district judge to whom the case is assigned will proceed expeditiously to resolve outstanding preliminary matters and to conduct a trial on the remaining issues. Since we have held that the June 15, 1990, notice of appeal transferred jurisdiction over the case to this court, the district court did not have jurisdiction to conduct the hearing that began on June 25. Of course, the parties may agree that evidence taken at that hearing be considered in any future proceedings.

WELLFORD, Circuit Judge, concurring:

I concur in Judge Lively's opinion with respect to the effect of Fed.R.Civ.P. 60(b)(6) and 68 based on the facts in this record. I write separately only to indicate that if I were writing on a clean slate, I would concur in the result of the recent decision in *Latin American Citizens Council v. Clements*, 914 F.2d 620 (5th Cir.1990) (en banc), that Section 2 of the Voting Rights Act of 1982 is not meant to apply to the selection of state judges on the same basis as executive and legislative political offices. The *Clements* court, I believe, was correct in concluding that Congress did not intend to apply a "results" test under Section 2 to election of state judges. *See also Wells v. Edwards*, 347 F.Supp. 453 (M.D.La.1972), *aff'd mem.*, 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973).

> I would now adhere to the following:
> Judicial offices and judicial selection processes are *sui generis* in our nation's political system; they determine the referees in our majoritarian political game. These offices are not "representative" ones, and their occupants are not representatives. Indeed, the state processes for filling them need not even be elective, as those for all representative offices presumably must be.... [W]hen Congress determined to expand Section 2 of the Act to incorporate a results test for vote dilution, it stopped short of imposing such a test for judicial offices on the States by limiting it to their election of "representatives."

*Clements*, 914 F.2d at 631.

I recognize, however, that our decision to the contrary concerning the effect of Section 2 of the Voting Rights Act, reported at 839 F.2d 275 (6th Cir.1988), is the law of the case until overturned by the Supreme Court (or by this court).