Melva Elizabeth NEWSOM,
Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF XENIA
CITY SCHOOL DISTRICT; Robert E.
Williams. Superintendent, Xenia City
School District, Defendants–Appellees.

No. 01–4055.

United States Court of Appeals,
Sixth Circuit.

March 4, 2003.

Before SILER, DAUGHTREY, and
COLE, Circuit Judges.

SILER, Circuit Judge.

Plaintiff Melva Elizabeth Newsom appeals the judgment for defendants in this action alleging disparate treatment and disparate impact in hiring decisions of the Xenia City School District. As set forth below, we affirm.

## BACKGROUND

After graduating from college, Newsom, an African–American woman, taught in the Xenia, Ohio, school system from 1973 until 1989. In 1989, believing that she would be rehired by the Board of Education upon reapplying, she resigned her position in order to pursue a graduate degree at Wright State University. Two years later, after completing all class work for her master's degree, Newsom contacted the Xenia Board of Education and expressed her interest in returning to full-time employment. She was hired to work within Xenia High School, but for an organization known as Jobs For Graduates, which provided instruction and counseling for at-risk students.

Through school personnel, she learned of a vacancy to teach high school social studies. She contacted James Fleisher, the district's personnel director, to inform him of her interest in the position. In June 1991, she received a telephone call from Fleisher's secretary during which Newsom was directed to visit the offices of the Board "to sign the paperwork for the job at the high school." Subsequently, however, she was informed that the social studies position had been filled by Robert Zolman, a white applicant and the only person interviewed for the job. In a later telephone conversation with Newsom, Fleisher explained that Zolman was also hired as the school's varsity football coach and that budget constraints made it desirable to fill the two positions with only one individual.

Despite her disappointment, Newsom remained in her Jobs For Graduates position and later contacted Fleisher again to express her continuing interest in obtaining a teaching job in the city. In May 1992, an individual from Fleisher's office telephoned Newsom to inform her that, due to a teacher's retirement, a social studies position had opened at Central Junior High School. Newsom followed up on the announcement with a letter indicating her interest, and an interview for the position was eventually scheduled. Prior to the interview, she received yet another telephone call from the Board, inquiring whether she had been certified by the State of Ohio to teach geography at the junior high level. Despite her lack of such certification, the Board still considered her for the vacancy. The interview was conducted by the principal, vice-principal, and chairperson of the social studies department at the junior high. During the interview, the principal informed Newsom that a geography certification was a prerequisite for the position. This statement prompted her to inquire whether other teachers at the school could be reassigned to teach that subject, thus freeing Newsom to teach courses for which she did possess state certification. The principal responded that, even though it was then only June, "[t]he schedule is set," and teaching assignments for the upcoming fall could not be rearranged. Ultimately, the Board offered the job to a white applicant, Brenda Osborne, who, although certified in geography, had not earned a master's degree and who had significantly less teaching experience than Newsom.

Newsom then initiated the present litigation in federal district court by filing a complaint against the Board and its superintendent. Specifically, she alleged that she had been subjected to disparate treatment and disparate impact in violation of Title VII and Ohio law and racial discrimination

in violation of 42 U.S.C. § § 1981 and 1983, and that promissory estoppel barred the defendants from denying her the 1991 position. The district court granted the defendants summary judgment on all of Newsom's claims.[1]

## STANDARD OF REVIEW

This court reviews *de novo* the grant of summary judgment by a district court. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir.2001), *cert. denied*, —— U.S. ——, 123 S.Ct. 73, 154 L.Ed.2d 15 (2002). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## DISCUSSION

To the extent that Newsom challenges the district court's ruling because the court initially granted the defendants only partial summary judgment, and granted it in full upon subsequent reconsideration, this argument is without merit. "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. . . . A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir.1991) (internal citation omitted). Further, because our review is *de novo*, any analytical flaw in the lower court's opinion is subject to correction on appeal.

■ In beginning our analysis of Newsom's various claims, we note at the outset that Newsom's Title VII disparate treatment claim based on the 1991 hiring decision is time-barred, as her EEOC filing occurred more than 300 days after the decision, and she has not shown a continuing violation extending into the limitations period. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002). Newsom's disparate treatment claim under Ohio law based on the 1991 position, her Title VII and Ohio law disparate treatment claims based on the 1992 position, and her disparate impact claims, however, are all viable. Because the elements and legal standards for evaluating claims of discrimination made under Title VII and under O.R.C. § 4112.02 are identical, separate analyses of the federal and state causes of action are not necessary. *See Laderach v. U–Haul of N.W. Ohio*, 207 F.3d 825, 828 (6th Cir.2000).

■ Newsom's remaining disparate treatment claims fail, however, due to her inability to show pretext.[2] The parties to

1. Newsom does not specifically challenge the district court's rulings regarding the § 1981, § 1983, or promissory estoppel causes of action.

2. Under the *McDonnell Douglas* framework applicable to such claims, a plaintiff must first "prove a *prima facie* case of discrimination. If the plaintiff establishes [her] *prima facie* case, the burden then shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.' If the defendant carries this burden, the plaintiff must prove that the proffered reasons were pretextual." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342 (6th Cir.1997) (citing and quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)) (internal citations omitted). Such a showing of pretext can be made by establishing: (1) that the employer's reasons for the adverse job action had no basis in fact; (2) that the reasons suggested did not actually motivate the employment decision; or (3) that the reasons themselves were insufficient to warrant the action taken. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

this appeal do not seriously dispute that the Board met its obligation of articulating legitimate, non-discriminatory reasons for the adverse employment actions taken against Newsom. The justifications of hiring one person for two positions and of seeking only certified instructors in specified subject areas are the type of explanations that satisfy an employment discrimination defendant's burden of production under the *McDonnell Douglas* framework. Newsom, however, has failed to raise a genuine issue of material fact tending to show that these reasons were pretextual. Accordingly, the district court was correct in granting summary judgment to the defendants on Newsom's disparate treatment claims.

 Likewise, the district court correctly dismissed Newsom's disparate impact claims. Newsom has offered evidence indicating that African–American teachers are underrepresented in the Xenia schools in comparison with the general African–American population. She has also listed nine policies or practices that she contends result in a disparate impact on non-white teacher applicants. As noted by the district court, however, Newsom has failed "to demonstrate that the disparity [she] complain[s] of is the result of one or more of the employment practices that [she is] attacking here, specifically showing that each challenged practice has a significantly disparate impact on employment opportunities for whites and nonwhites." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). Summary judgment in favor of the defendants on these causes of action was, therefore, proper.

**AFFIRMED.**