**Donald PASQUA, Plaintiff–Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 95–4008.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1996.

Decided Nov. 26, 1996.

Bruce M. Bozich (argued), Mark G. Patricoski, Bozich & Beran, Palos Heights, IL, for Plaintiff–Appellant.

David F. Schmidt, Joseph J. Hasman, Daniel A. Engel (argued), Peterson & Ross, Chicago, IL, for Defendant–Appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Donald Pasqua sued his employer, Metropolitan Life Insurance Company ("MetLife"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging sex discrimination and retaliation, claiming that he was discharged for complaining of sex discrimination. The district court granted summary judgment for MetLife and Pasqua appeals. We affirm.

### I. Background

Donald Pasqua was a MetLife sales representative from 1974 to 1985 and a sales manager from 1990 until his promotion to branch manager at the company's Navajo Hills Branch Office ("NHBO") in Palos Heights, Illinois on October 8, 1990. Milica Vukanic, a sales representative hired by Pasqua, informed Pasqua in April 1991 that certain employees were spreading rumors, including one that was rather coarse in content, that she and Pasqua were engaged in an intimate relationship.[1] Pasqua, who confronted the offender and denied the veracity of the rumor, thereafter telephoned Richard Mulvey, his regional manager, to report the incident. Mulvey told Pasqua that his handling of the situation was proper. Rumors of a sexual relationship between Pasqua and Vukanic continued to be disseminated by both men and women in the NHBO and in other MetLife offices. Reports were also circulated that Pasqua was showing favoritism to Vukanic. Pasqua telephoned Mulvey periodical-

---

1. Michael Door, a NHBO sales representative, stated, in the presence of the branch administrator and two other sales representatives, that, because Pasqua and Vukanic were both out of the office at the same time, Pasqua was probably over at Vukanic's house "laying her and her new tile." Door subsequently apologized for the comment. Pasqua Aff. para. 13–14.

ly to apprise him of the continuing nature of the rumors and accusations. Pasqua met with Mulvey around September 3, 1992 to discuss the rumors. Mulvey indicated that he had no solution to the problem but that he had admonished several of the offenders respecting their involvement in circulating the gossip. Pasqua informed Mulvey that Vukanic was threatening a sexual harassment lawsuit. The next day Mulvey, Pasqua and Vukanic met with one another to review the complaint, and Mulvey stated he would investigate.

Pasqua was demoted on September 28, 1992 because of the NHBO's poor performance, specifically because of the NHBO's failure to achieve sales objectives, and reassigned as an associate sales manager in another MetLife office around October 28, 1992. He remained there until July 26, 1993, when he went on disability status claiming that he was suffering from anxiety and depression. After Pasqua consulted with the Equal Employment Opportunity Commission and received a right to sue letter, Pasqua instigated litigation against MetLife under Title VII, claiming that he had been subject to sex discrimination in having to work in a hostile or abusive environment, and that he was demoted in retaliation for complaining about the rumors. The district court granted summary judgment in favor of MetLife.

## II.

■ We review the district court's grant of summary judgment de novo, examining the record and all reasonable inferences drawn therefrom in the light most favorable to Pasqua, the non-moving party. *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48,

106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. Sexual Harassment Claim

Title VII makes it unlawful for an "employer . . . to discriminate against any individual with respect to his . . . conditions . . . of employment, because of such individual's . . . sex. . . ." 42 U.S.C. § 2000e–2(a)(1). A Title VII plaintiff can satisfy his burden of proof by two methods: demonstrating that sex discrimination motivated the harassment, *see Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985), or, because of the difficulty in directly proving discrimination, he may employ the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Pasqua relies upon the *McDonnell Douglas* methodology.

■ Under the *McDonnell Douglas* framework, Pasqua must initially establish a prima facie case of sex discrimination by a preponderance of evidence. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The vague nature of the statutory language "conditions of employment," *see Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 24, 114 S.Ct. 367, 371–72, 126 L.Ed.2d 295 (1993) (Scalia, J. concurring), has permitted an " 'expansive' " reading of Title VII so as to include sexual "harassment" even when the plaintiff has suffered no economic injury. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986) (citation omitted). Sexual harassment, to be actionable, "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Id.* at 67, 106 S.Ct. at 2405 (quoting *Henson v.*

*City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).[2]

■ A prima facie case of sexual harassment also requires a showing that, but for the plaintiff's sex, he or she would not have been the subject of harassment. *See Mc-Donald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493. Harassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex. As the Eleventh Circuit explained:

> [T]here may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers. In such cases, sexual harassment would not be based on sex because men and women are accorded like treatment . . . . [and] the plaintiff would have no remedy under Title VII.

*Henson,* 682 F.2d at 904 (citations omitted). *See also Vandeventer v. Wabash Nat'l Corp.,* 887 F.Supp. 1178, 1180–81 (N.D.Ind.1995); *Goluszek v. H.P. Smith,* 697 F.Supp. 1452, 1456 (N.D.Ill.1988).

■ Pasqua's claim falls short of establishing the elementary requirement in this circuit that the alleged harassment was based upon the plaintiff's sex. There is not even a hint in the record that any rumors or vulgar statements concerning an illicit relationship between Pasqua and Vukanic were made *because* Pasqua was a male. By the very nature of such gossip, *both* Pasqua and Vukanic were made the subject matter as is evidenced by Vukanic being the first to utter a threat to sue over the matter. Moreover, both men and women alike were talebearers. Such rumors spread, irrespective of the truth, for any number of reasons having nothing to do with gender discrimination. In addition to what commonly motivates gossip of this type—a fascination with the prurient—perceptions of favoritism on Pasqua's part added fuel to the fire in this case. Although it is not inconceivable that someone might spread slanderous rumors in the workplace for the simple motivation that someone else was of a particular gender, this case, however, is not one of those rarities.

Pasqua argues that the district court erred in failing to consider whether harassment by someone of the same sex, which is actionable in other circuits, should be recognized in this circuit, and in overlooking the pervasive and severe impact of the rumors which he argues created a hostile and intimidating work environment. We need not consider these issues for Pasqua has failed to meet the most basic element of a prima facie case of sex discrimination. Moreover, with respect to the first claimed error, we note that Pasqua failed to raise the same-sex issue before the district court. He argued before the district court that, because Mulvey stated to Vukanic that he took her complaints seriously and would, therefore, investigate her complaints, his complaints were taken less seriously and this disparity was on account of gender. Pasqua abandons this argument on appeal in lieu of the same-sex harassment argument. Not having raised the same gender issue before the district court, he has forfeited appellate review of this issue. *See United States v. Olano,* 507 U.S. 725, 730–32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993); *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 505 (7th Cir. 1994). In any event, it is immaterial in this case whether the alleged harassment came from someone of the same gender because, as we have already concluded, the rumors were neither initiated nor perpetuated *because of* Pasqua's sex.

## IV. Retaliation Claim

■ Title VII also makes it unlawful for an employer to discriminate against an employee because of such employee's opposition to the discriminatory conduct made unlawful under Title VII. 42 U.S.C. § 2000e–3(a).

---

2. The Court, in reaffirming *Vinson,* clarified that a sexual harassment plaintiff must meet an objective standard (though one as equally vague as the statute and, therefore, unavoidable, see *Harris,* 510 U.S. at 24, 114 S.Ct. at 371 (Scalia, J. concurring))—proof of conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Harris,* 510 U.S. at 21, 114 S.Ct. at 370.

To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, Pasqua must establish by a preponderance of evidence that: (1) he participated in *protected activity* or opposed an *activity made unlawful* under Title VII; (2) he subsequently suffered adverse employment action; and (3) there was a causal connection between the adverse employment action and his participation or opposition. *Koelsch v. Beltone Electronics Corp.,* 46 F.3d 705, 708 (7th Cir. 1995).

Pasqua satisfies the first element if he can demonstrate that he had a "reasonable belief" that a Title VII violation occurred when he first complained to Mulvey about the rumors. *Jennings v. Tinley Park Community Consol. Sch. Dist. No. 146,* 796 F.2d 962, 967 (7th Cir.1986). The trial court found that Pasqua met this burden because he "believed that the rumors and accusations amounted to sexual harassment as to Vukanic.... Even if [Pasqua] did not believe that he was the subject of sex discrimination, so long as he believed that the rumors and accusations amounted to sexual harassment as to Vukanic, his complaints to Mulvey constituted a protected activity." Mem. Op. at 15. Ordinarily, we do not second-guess a trial court finding on appeal, but the district court seems to be confused about the precedent upon which it relied. Pasqua's *subjective* beliefs are irrelevant. Pasqua was required to establish that he had a *reasonable* belief that the rumors amounted to harassment based upon sex. *Jennings,* 796 F.2d at 967. Again, there is not a trace of evidence in the record that the rumors circulating throughout the NHBO and other MetLife offices were motivated by any disparate consideration of either Pasqua or Vukanic's gender.

Moreover, even if there was some evidence that the rumors were disseminated because of Pasqua's gender and that such gossip amounted to "harassment" (a tall order indeed), the record is clear that Pasqua was demoted not because he complained about alleged harassment, but rather because he failed to demonstrate proper managerial skills. Pasqua's subpar performance in this area for more than a year is well documented. An April 29, 1991 letter from Mulvey to

Pasqua states that Mulvey was "very disappointed" in the sales figures for the NHBO during the first quarter of 1991. In this communication, Mulvey highlighted where improvement was needed, explicitly advising Pasqua that the NHBO's success depended upon his performance. A little more than nine months later, Pasqua received his "Personal Insurance Development Review" for 1991, in which Mulvey gave Pasqua forewarning that his job was in jeopardy because of the poor sales performance of the NHBO:

> 1991 was an extremely poor year for the Navajo Hills Office and it was a definite negative in the overall Regional results. The lack of growth in NSC [net sales credits] and productive manpower was a major factor in the Region not realizing the planned results. Immediate improvement in the first quarter of 1992, is a must. Continued poor performance could result in [Pasqua] returning to personal production.

On April 9, 1992, Mulvey generated a Memorandum of Record memorializing his discussion with Pasqua concerning the NHBO's inadequate performance for the first quarter of 1992:

> I met with Don Pasqua and discussed the Branch performance for the first quarter. I told Don that the results were unsatisfactory and he needs to work at the bussiness [sic] plan to have a good second quarter. I also pointed out to Don that one [sales representative] appointment for the second quarter was unsatisfactory and he must get on track for the second quarter with a minimum of two appointments. We also reviewed some recruiting ideas and worked out a plan to change the results.

Two months later, Mulvey generated a second Memorandum of Record in which Mulvey recorded yet another warning to Pasqua that he must meet his hiring goals or face removal from his position:

> I met with Don Pasqua about the lack of progress in the appointments to date. We discussed the potential candidates he had, why they fell out and what he was doing to change the result.... I told Don that this was a serious matter and he must begin to

get results. Don agreed that he knew what to do and would get it done.

I told Don that failure to meet the appointment goals would result in his being taken out of the Branch Manager position.

Like a parent who repeatedly forewarns of pending discipline before taking action, Mulvey wrote to Pasqua on July 21, 1992 to advise that the end of his tenure as a branch manager was imminent unless NHBO reversed its performance:

Enclosed is the business objectives we agreed upon for the third quarter of 1992.

In order to accomplish this goal you will have to write at least $11,000 of FYC per week. This relates to 23 applications, and on a 4–1 closing ratio, 92 seen calls with fall out on appointments, which should result in 121 scheduled appointments for each week.

Don, this is the bottom line for your office. We've talked several times about the necessity of turning around a poor performance in 1991, and now two disasterous [sic] quarters in 1992.

Unless your results for this quarter equal your planned performance, it will be difficult to justify your remaining as the Branch Manager in Navajo Hills.

Finally, an August 21, 1992 letter from Mulvey to Pasqua indicated that progress towards goals for the third quarter did not look encouraging and that they would meet shortly to discuss a new direction. A little more than a month later, Pasqua was demoted. It is clear from the record and the foregoing documentary evidence that Pasqua was demoted for no other reason than his poor work performance. Whether Pasqua's demotion was also motivated by consideration of the persistent reports concerning Pasqua and Vukanic is somewhat conceivable but without any support in the record other than appellant's statement, and immaterial to this Title VII claim. Title VII does not prohibit employers from discharging employees for immoral conduct or because of persistent rumors of the same. In any event, based upon this record, we are convinced that Pasqua was demoted because of his poor managerial performance.

Even though Pasqua was without authority to hire, fire or make transfers at the NHBO, he did have the authority to recommend the discipline or discharge of employees. That being so, we are puzzled as to why Pasqua neither recommended the transfer of Vukanic to another branch, nor suggested the discipline or discharge of any of the employees who continued to spread rumors in the face of his denials and admonishment to them. Pasqua's failure to take direct action in response to dissension-inciting gossip also reflects his overall poor managerial skills.

### V. Conclusion

Pasqua's failure of proof concerning a required element of his prima facie case of sex discrimination—that he was harassed or demoted because of his sex—necessarily renders all other facts immaterial, *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552, and further analysis under *McDonnell Douglas* unnecessary. The judgment of the district court is AFFIRMED.