**Steven J. HOLMAN, and Karen L. Holman, Plaintiffs,**

v.

**STATE OF INDIANA and Indiana Department of Transportation, Defendant.**

**No. 1:97 CV 0178.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 1, 1998.

Christopher C. Myers, Myers and Geisleman, Fort Wayne, IN, for plaintiffs.

Sabra A. Weliever, Theresa A. Stevens, Indiana Attorney General, Indianapolis, IN, for defendants.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before this court upon its request for further briefing from the parties concerning the court's previous ruling, dated September 8, 1997, granting Defendants, State of Indiana ("State") and Indiana Department of Transportation's ("INDOT") (collectively, the "defendants") Motion to Dismiss plaintiffs Title VII sexual harassment claims. In that Order, the court determined that because both plaintiffs were alleging sexual harassment by the same supervisor, they both, as a matter of law, could not prove that the alleged harassment occurred "because of sex." Plaintiffs, Karen and Steven Holman (collectively, "plaintiffs" or "the Holmans"), filed a motion to reconsider this court's Order on the basis of *Oncale v. Sundowner Offshore Services, Inc.,* — U.S. ——, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). On September 23, 1998, this court entered an order denying plaintiffs motion for reconsideration with respect to the argument that *Oncale* altered the court's prior ruling. However, in reviewing the motion for reconsideration, several cases came to the court's attention which contained language in support of the plaintiffs' argument that both plaintiffs could maintain a cause of action for sexual harassment. At this juncture, the court determined that its prior Order should be taken under advisement pending further briefing by the parties on the issue. On September 30, 1998 plaintiffs filed their supplemental brief in support of their motion to reconsider. Subsequently, on October 22, 1998 defendants filed their supplemental brief to which plaintiffs responded with their cross brief on October 29, 1998. Briefing was completed on November 2, 1998 after defendants filed their cross-brief. Thus, the court shall now reconsider its prior Order.

### APPLICABLE STANDARD

The court begins by noting that "motions to reconsider are not ill-founded step-children of the federal court's procedural arsenal, but rather effective yet quite circum-scribed methods of 'correct[ing] manifest errors of law or fact or to present newly discovered evidence.'" *In re August, 1993 Regular Grand Jury,* 854 F.Supp. 1403 (S.D.Ind.1994) *quoting Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982). A court is neither obligated nor foreclosed from reconsidering its prior decisions. In matters involving interlocutory orders, such as motions to dismiss, or matters that have not been taken to judgment or determined on appeal, the Seventh Circuit has made clear that the district courts have the discretion to reconsider their decisions at any time. *Cameo Convalescent Center, Inc. v. Percy,* 800 F.2d 108, 110 (7th Cir.1986). Accordingly, the court notes that it has ample authority for reconsidering its previous order on defendants' motion to dismiss.

A motion to dismiss challenges the sufficiency of the plaintiff's complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted only if the plaintiffs could prove no set of facts, consistent with their complaint and attachments, upon which the defendants could be liable. *Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115, 1118 (7th Cir.1995); 65 F.3d 664. Documents attached to the complaint can be considered by the district court, particularly where the documents are referenced throughout the complaint. *See Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir.1995).

"When a federal court reviews the sufficiency of a complaint ... its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "A complaint ... should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In determining the propriety of dismissal under Fed.R.Civ.P. 12(b)(6), the court "must accept as true all

well-pled factual allegations in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff." *Perkins v. Silverstein*, 939 F.2d 463 (7th Cir.1991). *See also Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1032–33 (7th Cir.1987). The purpose of the motion to dismiss is to test the legal sufficiency of the complaint and not to decide the merits. *Triad Assoc., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989). "If it appears beyond doubt that plaintiff can prove any set of facts consistent with the allegations in the complaint which would entitled them to relief, dismissal is inappropriate." *Perkins*, 939 F.2d at 466. Further, the court must "construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). Keeping this standard in mind, the court proceeds to reconsider defendants motion to dismiss.

### APPLICABLE FACTS

Plaintiffs instituted the present action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Equal Pay Act, 29 U.S.C. § 206 arising out of their employment relationship with the defendants. The Holmans are husband and wife and, at all times relevant to their complaint, were employed by the defendants as maintenance workers. (Complaint, ¶¶ s 4(a), 6(a)). Both plaintiffs reported to Gale Uhrich ("Uhrich"), a male shop foreman. (Complaint, ¶¶ s 4(a), 6(b)). Plaintiff, Karen Holman, alleges that Uhrich sexually harassed her by "touching her body, standing too closely to her, asking her to go to bed with him and making sexist comments and otherwise making Plaintiff work in a sexually hostile work environment." (Complaint, ¶ 4(b)). In addition, she contends that as a result of her refusal to perform the acts requested by Uhrich, he negatively altered her evaluations and otherwise retaliated against her for protesting his harassing behavior. (Complaint, ¶ 4(c)). Karen Holman also asserts a claim that she has been denied equal pay for equal work. (Complaint, ¶ 4(d)).

In the same complaint, Plaintiff, Steven Holman, alleges that Uhrich also sexually harassed him by "grabbing his head while asking for sexual favors." (Complaint, ¶ 6(b)). When Steven Holman refused such requests, he alleges that Uhrich retaliated by unlocking his locker and throwing away his belongings. (Complaint, ¶ 6(c)). In addition, Steven Holman claims that he suffered retaliation from Uhrich due to his wife's filing internal discrimination charges against Uhrich. (Complaint, ¶ 6(c)).

### DISCUSSION

#### I. *Previous Order on Motion to Dismiss*

In the court's initial ruling on defendants motion to dismiss, the court resolved the unique issue of whether *both* the Holmans, as a matter of law, could maintain sexual harassment claims where they both suffered harassment of a sexual nature by the same individual. First, the court noted that the gravamen of any sexual harassment claim is that the plaintiff suffered discrimination "because of sex." Considering the facts as alleged in the instant case, the court determined that because the acts of the alleged harasser in this case were equally harassing to both plaintiffs, neither could prove that the alleged harassment occurred "because of sex." In support of this conclusion, the court cited *Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir.1996), which held that "harassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex." *Pasqua*, 101 F.3d at 517. As a result, because Uhrich accorded the Holmans like treatment, the court determined that both the Holmans could not maintain claims of sexual harassment. The court now revisits this issue in light of the additional case authority and briefs submitted by the parties.

#### II. *Reconsideration of Original Order*

From the outset, the court is reminded that a motion to dismiss tests the legal sufficiency of the complaint and does not decide the claims on the merits. *Triad Assoc., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989). Thus, regardless of whether the Holmans have alleged solid or weak claims, the question posed to this court is

whether the claims, as pled by plaintiffs, state a claim for relief. Upon reexamining the issue, the court concludes that plaintiffs do not state a claim for relief.

■ An employee asserting a claim of hostile work environment sexual harassment must prove the following: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the harassment was sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66–73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). At issue in the present case is whether plaintiffs meet the third requirement, i.e., that the harassment is based on sex.

■ The "based on sex" element has increasingly been placed under fire in the context of same-sex sexual harassment and equal opportunity harassment claims. The Supreme Court recently reaffirmed the principle that Title VII sexual harassment claim is directed only at "discrimination ... because of ... 'sex" in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, ——, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Accordingly, the ultimate inquiry for a sexual harassment plaintiff is whether he or she can prove "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] ... because of ... sex.' " *Id.* Defendants argue, as they did in their original

briefs, that two plaintiffs, one male and one female, cannot prove, as a matter of law, that the harassment occurred "because of ... sex" where they each were accorded like harassing treatment by a supervisor. Thus, under defendants theory, the "equal opportunity harasser" is insulated from liability. In response, plaintiffs point to numerous cases which hold that insulating the "equal opportunity harasser" from liability is an unintended result of the "because of sex" distinction; thus, it is no defense to sexual harassment that a supervisor harasses both males and females alike.

The saga of the "equal opportunity harasser" has sparked numerous debates among scholars and courts concerning the viability of sexual harassment claims where the conduct is spread evenly between both genders.[1] Based, in part, upon the theory that equal harassment is not gender discrimination as required for Title VII liability, sexual harassment defendants often invoke the bisexual harasser defense and the equal opportunity harasser defense to avoid liability for their offensive conduct.[2] These defenses succeed because the "equal opportunity harasser" does not treat plaintiffs differently than members of the opposite sex; indeed, by definition the harasser equally harasses both sexes. Thus, under current sex discrimination theories, there is no discrimination when something happens to both sexes and not simply to one.

■ Perhaps the Supreme Court's recent decision in *Oncale* is an appropriate starting point for the court's analysis in the present case. *Oncale* clearly articulates that "Title VII's prohibition of discrimination 'because of

---

**1.** Numerous scholarly articles exist on this subject which debate the propriety of the current state of sexual harassment jurisprudence. *See The Equal Opportunity Harasser as a Paradigm for Recognizing Sexual Harassment of Homosexuals Under Title VII,* Stephen S. Locke, 27 Rutgers L.J. 383 (1996); *A Rose By Any Other Name ... The Gender Basis of Same–Sex Sexual Harassment,* Robert Brookins, 46 Drake L.Rev. 441 (1998); *Footnote 55: Closing the "Bisexual Defense" Loophole in Title VII Sexual Harassment Cases,* Sandra Levitsky, 80 Minn.L.Rev. 1013 (1996); *What's Wrong with Sexual Harassment?,* Katherine M. Franke, 49 Stan.L.Rev. 691 (1997).

**2.** In addition to these defenses, a third defense arises in the context of the all-male or all-female

work environment. In such cases where same-sex harassment is alleged and the environment exists solely of a single gender, there is clearly no evidence which could be presented to show that employees of the opposite gender were treated differently. *See Shermer v. Illinois Department of Transportation,* 937 F.Supp. 781 (C.D.Ill.1996). In *Shermer,* a male supervisor was accused of harassing a male employee in an all-male environment. The defendant argued that "because it was impossible for the defendant to treat women differently because none were present, Plaintiff cannot prove that he was treated differently from women."

sex' protects men as well as women." *Oncale*, 523 U.S. at ——, 118 S.Ct. at 1001. Thus, it is now well-settled that both the Holmans are protected from sexual harassment under Title VII regardless of the gender of the harasser or the harasser's sexual orientation. *Oncale*, 523 U.S. at ——, 118 S.Ct. at 1002. However, this is true only if the discrimination occurred "because of ... sex." *Id.* To determine whether the discrimination occurred because of sex, *Oncale* teaches that the critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.*

Under the Supreme Court's analysis, presumably, if members of one sex are exposed to identical disadvantageous terms or conditions of employment as the other sex, there is no Title VII discrimination. Such a reading gives legitimacy to the various courts' findings that no liability exists where both males and females in the workplace are accorded like treatment. *See Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir.1996) ("[H]arassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex."); *Henson v. City of Dundee*, 682 F.2d 897, 904, 905 n. 11 (11th Cir.1982) ("There may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers. In such cases, sexual harassment would not be based on sex because men and women are accorded like treatment ... and the plaintiff would have no remedy under Title VII."); *Fair v. Guiding Eyes for the Blind, Inc.*, 742 F.Supp. 151, 156 (S.D.N.Y.1990) ("If the acts complained of would be equally offensive to both sexes, then the subject of the harassment cannot claim to have been singled out because of her sex.").

Without question, these authorities give rise, in the present case, to defendants argument that, as a matter of law, it is impossible for the Holmans to demonstrate that one of them was exposed to disadvantageous terms or conditions of employment to which the other was not since they both allege equal harassment. As evidenced by *Oncale*, the gravamen of a discrimination claim is a showing of disparate treatment. However, on several occasions prior to the Supreme Court's decision in *Oncale*, the Seventh Circuit Court of Appeals has indicated a willingness to accept a claim of sexual harassment by both male and female employees against the same individual. *See McDonnell v. Cisneros*, 84 F.3d 256 (7th Cir.1996); *Doe v. City of Belleville*, 119 F.3d 563 (7th Cir.1997), *judgment vacated* —— U.S. ——, 118 S.Ct. 1183, 140 L.Ed.2d 313 (1998). Although the facts in these cases are not similar to the facts presently before this court, the language used by the Seventh Circuit in resolving these cases supports plaintiffs' contentions that they both may maintain a claim for sexual harassment.

For instance, in *McDonnell v. Cisneros*, the court was faced with a sexual harassment claim brought by both a male and a female employee alleging harassment stemming from an abusive investigation of charges that the employees engaged in job-related sexual misconduct. The complaint alleged that the process of investigating the anonymous complaint created the harassing environment. The Seventh Circuit, while affirming the lower court, did so, not because the plaintiffs could not prevail on claims of harassment by the same employer, but instead because the allegations that the investigation itself was harassing would create an untenable scenario for employers investigating charges of sexual harassment. *McDonnell*, 84 F.3d at 261 ("But if, because the employer wants to demonstrate how seriously he takes such charges, the investigation oversteps the proper bounds, causing humiliation to the targets of the investigation, the employer will, under the interpretation of the law that the plaintiffs urge in this case, also be guilty of sexual harassment."). With respect to whether both the plaintiffs could sustain a claim, however, the court indicated that they could do so:

> ... [T]he government urges us to affirm the dismissal of the plaintiffs' claim of sexual harassment on the ground that, since the harassment was impartially directed against the male and female accused of improper sexual activity, there was no dis-

crimination on grounds of sex. We do not find this class of arguments compelling and are rather surprised to find the Department of Justice urging them ... It would be exceedingly perverse if a male worker could buy his supervisors and his company immunity from Title VII liability by taking care to harass sexually an occasional male worker, though his preferred targets were female.

*McDonnell*, 84 F.3d at 260 (internal citations omitted).

Similarly, in *Doe*, the Seventh Circuit, while faced primarily with the issue of same-sex harassment, provided a detailed analysis of hostile work environment sexual harassment. In doing so, the Seventh Circuit stated that "sexual epithets often directed at women, such as 'cunt' and 'bitch' clearly reflect the gender-based nature of the animus that motivates them." *Id.* at 577 n. 10. The court further articulated that "we must question whether it is appropriate to view sexual harassment as actionable sex discrimination only when the plaintiff is able to show that she was harassed because she was a woman rather than a man, or vice versa." *Id.* at 577. Under the Seventh Circuit's view, proof that "the harasser was motivated to target one gender and not the other may be necessary where the harassment is not on its face sexual ... but such proof would seem unnecessary when the harassment itself is imbued with sexual overtones." Thus, in this case, the Seventh Circuit determined that the sexual nature of the harassment itself meets the "because of sex" requirement.[3]

In addition to the Seventh Circuit's thoughts on the subject, district courts situated within the Seventh Circuit have taken a similar position. In *Miller v. Vesta*, 946 F.Supp. 697 (E.D.Wis.1996), the court determined that disparate treatment of the genders is evidence of harassment but is not a requirement:

In a Title VII sexual harassment case, the focus is on whether there is an allegation or evidence that the plaintiff suffered sexual harassment based on her sex. Disparate treatment of the genders is evidence of such harassment, but it is not a requirement. Thus, an employer that sexually harasses both genders equally is not insulated from Title VII liability. Instead, it would be liable for all of the sexual harassment it perpetrates because it is individuals, not classes, who suffer discrimination. There, the primary issue was whether same-sex harassment was actionable. However, the court rejected the premise that "the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the opposite sex." Instead, the court, citing *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), for the proposition that the focus of sexual harassment is on the victim, not the harasser, determined that disparate treatment of the genders is not required in a Title VII sexual harassment case.

Finally, in *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir.1994), the Ninth Circuit held that the fact that a supervisor harasses males and females alike is not a valid defense to sexual harassment and would not preclude a showing that the harassment was based on gender. In *Steiner*, the female plaintiff worked as a blackjack dealer and eventually a floor person at the Showboat Hotel. Her supervisor, Trenkle, subjected her to offensive names based on her gender, such as "dumb fucking broad," "cunt," and "fucking cunt". In addition, Trenkle utilized sexually explicit language when reprimanding her in front of customers. An investigation into Trenkle's behavior demonstrated that he was abusive to men and women alike, but his abusive treatment and remarks toward women were of a sexual or gender specific nature. After the plaintiff brought suit, Trenkle argued that he did not accord males and females different treatment and

3. Whether this reading of *Doe* remains viable is questionable in light of the Supreme Court's decision to vacate and remand, without opinion, the Seventh Circuit's opinion on the basis of the holding in *Oncale*. Although the *Oncale* decision reiterates that the Supreme Court has "never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations," this language appears not to foreclose the possibility that it could be if such sexual content indicated that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

thus, did not discriminate on the basis of gender.

In response to this argument, the Ninth Circuit concluded:

> Furthermore, even if Trenkle used sexual epithets equal in intensity and in an equally degrading manner against male employees, he cannot thereby "cure" his conduct toward women ... [A]lthough words from a man to a man are differently received than words from a man to a woman, we do not rule out the possibility that both men and women working at Showboat have viable claims against Trenkle for sexual harassment.

*Steiner*, 25 F.3d at 1464. In line with this response, the Ninth Circuit reversed the district court's grant of summary judgment.

Prior to the *Oncale* decision, these cases created the impression that it was possible for both males and females to be sexually harassed by an "equal opportunity harasser." This impression was created by language in these cases which suggested that disparate treatment was not necessarily the gravamen of a sex discrimination claim where the harassing conduct itself demonstrated some gender animus. However, in light of the Supreme Court's reaffirmation that proof that discrimination is "because of sex" requires a showing that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed," *Oncale*, 523 U.S. at ——, 118 S.Ct. at 1001, the implications in these cases are of questionable significance. While the court acknowledges plaintiffs' arguments that the very sexual nature of the harassment is sufficient to demonstrate that the harassing conduct would not have occurred "but for" the sex of each plaintiff, *Oncale* clearly indicates that this is not necessarily a foregone conclusion:

> We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.

*Oncale*, 523 U.S. at ——, 118 S.Ct. at 1001. Further, the Fifth Circuit recently recognized this portion of the *Oncale* holding as "explicitly recogniz[ing] that sexual content is not the Title VII talisman." *Butler v. Ysleta Independent School District*, 161 F.3d 263,

270 (5th Cir.1998). Thus, the Seventh Circuit's recognition in *Doe* that harassment which is sexual in content is always actionable is no longer convincing.

Finally, a brief perusal of cases decided since *Oncale* leads the court to the conclusion that the equal opportunity harasser escapes the purview of Title VII liability. *See, e.g., Butler*, 161 F.3d 263, 270 ("Irwin's sending of offensive materials to both men and women is evidence that the workplace itself, while perhaps more sexually charged than necessary, was not sexually charged in a way that made it a hostile environment for either men or women."); *Romero v. Caribbean Restaurants, Inc.*, 14 F.Supp.2d 185, 187 (D.P.R. 1998) (rejecting Title VII same-sex hostile work environment sexual harassment claim where harasser subjected both male and female employees to lewd behavior); *Raum v. Laidlaw, Ltd.*, No. 97–CV–111, 1998 WL 357325 (N.D.N.Y. July 1, 1998) (dismissing Title VII same-sex hostile work environment sexual harassment claim where plaintiff failed to allege "discrimination ... because of sex" and alleged harasser merely "engaged in conduct that some people of either gender may consider to be rude or vulgar behavior").

■ With these theoretical underpinnings set forth, the court turns now to the complaint in the present case. The Holmans each allege conduct of a sexual nature by their supervisor which occurred because of their respective genders. With respect to Mrs. Holman, the complaint alleges that Uhrich asked her to go to bed with him, touched her body, stood too closely to her and made sexist comments. When she refused the requests, she alleges that she received negative performance evaluations. In contrast, Mr. Holman alleges that Uhrich grabbed his head while asking for sexual favors. Upon his refusal, Mr. Holman alleges that Uhrich destroyed some of his belongings in his locker. From these allegations, it is clear that each suffered harassment which involved requests for sexual favors. Thus, neither was subjected to disadvantageous terms or conditions of employment to which members of the other sex were not exposed. For this reason, the court must dismiss the sexual harassment claims.

Often the court is placed in the position of being the mediator between the reality of legal doctrine and the dictates of common sense. The court cannot deny that this is such a case. Certainly, the court is cognizant that to decide as it does creates an anomalous result in sexual harassment jurisprudence which leads to the questionable result that a supervisor who harasses either a man or a woman can be liable but a supervisor who harasses both cannot be. While the court finds that the equal opportunity harasser escapes liability in the present case, it is not condoning the existence of such conduct in the workplace. Simply put, the court concludes that, under current Title VII jurisprudence, conduct occurring equally to members of both genders cannot be discrimination "because of sex." Title VII is not a "general civility code for the American workplace." *Oncale*, —— U.S. at ——, 118 S.Ct. at 1002. As such, it does not prohibit all verbal or physical harassment. *Id.*

### CONCLUSION

Based on the foregoing, the court DENIES Plaintiff's Motion for Reconsideration of this court's previous order granting the Defendants' Motion to Dismiss. The original Order GRANTING Defendants' Motion to Dismiss the sexual harassment claims is hereby REINSTATED.