**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0192n.06
Filed: December 29, 2004

**No. 03-1342**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LEELANAU WINE CELLARS LTD., | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | **On Appeal from the United States** |
| | ) | **District Court for the Western** |
| **v.** | ) | **District of Michigan** |
| | ) | |
| BLACK & RED, INC., JOANNE SMART and | ) | |
| ROBERTA KURTZ, | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | |

Decided and Filed: _____

**Before:**      **BOGGS, Chief Judge; GUY, Circuit Judge; and HOOD, District Judge.[1]**

**DENISE PAGE HOOD, District Judge.**  Appellant Leelanau Wine Cellars, Ltd. appeals

from the judgment entered by the United States District Court for the Western District of Michigan.

The district court entered an order on August 13, 2002, which granted partial summary judgment

in Appellant's favor relative to its trademark infringement and unfair competition claims under the

Lanham Act and granted Appellant's request for a permanent injunction. (J.A. 320-27); (J.A. 228).

However, on February 14, 2003, the district court reconsidered its August 13, 2002 decision and

entered an order withdrawing its previous order, dissolving the injunction entered against Appellees[2]

---

[1]The Honorable Denise Page Hood, United States District Judge for the Eastern District
of Michigan, sitting by designation.

[2]Appellees Joanne Smart and Roberta Kurtz are the owners of Appellee Black & Red,
Inc.

and granted summary judgment for the *Appellee*, thus dismissing Appellant's case. (J.A. 20-40). Appellant now seeks appellate relief and argues that the district court had no authority to modify and vacate its August 13, 2002 order; and that a genuine issue of material fact exists relative to Appellant's trademark infringement and related claims in its Complaint. After a review of the record and the applicable law, we hold that the district court had the authority to vacate the earlier order, but that genuine issues of material fact remained that should have precluded summary judgment. We therefore reverse the district court's decision and remand this matter to the district court.

## I.

Appellant has been a producer of wine since the 1970's and in 1997 Appellant registered its trademark, "Leelanau Cellars," with the United States Patent and Trademark Office. In 2000, Appellant learned that Appellee Black & Red, Inc. was planning to sell, distribute and market wine using the name "Chateau de Leelanau," which in Appellant's opinion infringed upon Appellant's trademark. Appellant claims that it approached Appellees on more than one occasion in an effort to convince them to use a non-infringing mark. Because of Appellees' perceived uncooperative position, Appellant filed suit against Appellees alleging trademark infringement, unfair competition, and Michigan Consumer Protection Act violations. (J.A. 9, 68).

Subsequently, Appellant filed a motion for partial summary judgment on the issue of infringement. (J.A. 75). Appellant's motion was granted and the district court entered a judgment imposing a permanent injunction against Appellees in an order entered August 13, 2002. (J.A. 228).

On August 28, 2002, a bench trial commenced on the question of whether the infringement was willful. On September 4, 2002, the district court *sua sponte* modified its August 13, 2002 order, thereby permitting Appellees to sell previously labeled wine with the alleged infringing mark, but

only at its "tasting rooms." (J.A. 245). On October 11, 2002, the parties were put on notice by the district court that it was contemplating reconsideration of its August 13, 2002 order because, "it had reservations about its August 13, 2002 order based upon further review of the facts, including the testimony received during the bench trial . . . . " (J.A. 293). On November 21, 2002, the district court entered an order stating that it believed its August 13, 2002 order may have been erroneous and providing "[Appellant] the opportunity to identify any evidence not presented in the summary judgment motion regarding the issue of likelihood of confusion that it would present at trial and to address whether trial is necessary." (J.A. 16).

On February 14, 2003, the district court entered its order dismissing Appellant's lawsuit, stating that "[t]he Court concludes that reconsideration is appropriate in these circumstances because if the Court's partial summary judgment and injunction were erroneous, the immediate adverse consequences to Defendants are enormous, and this Court is the best place to correct its own error in the first instance." (J.A. 26-27). On March 14, 2003, Appellant filed its notice of appeal in this matter. (J.A. 42).

## II.

We review *de novo* the district court's conclusions of law in its reconsideration of an order. *See, e.g., Elder v. Holloway,* 510 U.S. 510, 516 (1994); *see also Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119, 122 (6th Cir. 1982); *see also Peabody Coal Co. v. Local Union No. 1734, 1508 & 1548, UMW,* 484 F.2d 78, 81 (6th Cir. 1973).

## III.

**A.      Trial Court's Authority to Reconsider *Sua Sponte* its August 13, 2002 Order**

*1.      Time Frame the Trial Court May Reconsider and Modify its Prior Order*

Rules 54(a) and (b) of the Federal Rules of Civil Procedure regarding judgments state as

follows:

> (a) Definition; Form. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings.

> (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(a) and (b). Rules 59(d) and (e) of the Federal Rules of Civil Procedure regarding amending judgments state:

> (d) On Court's Initiative; Notice; Specifying Grounds. No later than 10 days after entry of judgment the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. When granting a new trial on its own initiative or for a reason not stated in a motion, the court shall specify the grounds in its order.

> (e) Motion to Alter or Amend Judgment. Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

Fed. R. Civ. P. 59(d) and (e).

Appellant, citing Fed. R. Civ. P. 59(e), contends that the trial court erred when it reconsidered and modified its August 13, 2002 order *sua sponte* because the modified order was not

entered until February 14, 2003. Appellant argues that since Rule 59(d) provides that a motion to amend or alter a judgment must be filed within ten days from the date of the judgment, the court failed to timely modify its August 13, 2002 order, which requires the February 14, 2003 opinion and order to be vacated. The trial court responded, in part, to Appellant's argument as follows:

> The correct starting point in the analysis is the well-recognized principle that district courts posses[s] the discretion to reconsider their interlocutory orders at any time. *See, Holman v. Indiana,* 24 F. Supp. 2d 909, 910 (N.D. Ind. 1998) (citing, *Cameo 21 Convalescent Ctr., Inc. v. Percy,* 800 F.2d 108, 110 (7th Cir. 1986)). In discussing this rule, the Sixth Circuit Court has observed, "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted); *see also United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) (noting that a district court has inherent power to reconsider interlocutory orders "when it is consonant with justice to do so"); *Lewis v. Grinker,* 660 F. Supp. 169, 170 n. 1 (E.D. N.Y. 1987) ("Since no final judgment has been entered in this case, the decision whether or not to reconsider a non-final order is within the plenary power of this Court."). Another court has noted:
>
> The general rule regarding the power of a district court to rescind an interlocutory order is as follows: "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind,* or modify an interlocutory order for cause seen by it to be sufficient."

(J.A. 23-24)(citations omitted).

We agree with the trial court's analysis. No final judgment had been entered in the case. Appellant only moved for *partial* summary judgment on Counts I and II of Appellant's five-count First Amended Complaint. (J.A. 16) Neither Rule 54(b) nor Rule 59(e) change the interlocutory nature of the August 13, 2002 order. Therefore, "[b]ecause the Order remains interlocutory [since no appeal was taken], Rule 59 [did] not affect [the District Court's] inherent power to reconsider the Order." (J.A. 26). The trial court did not err in reconsidering its August 13, 2002 order.

2. *Single Claims v. Multiple Claims*

Appellant also argues relative to the application of Rule 54(b) that since the Complaint in this case asserts a "single claim" as opposed to "multiple claims," Rule 54 is inapplicable, thus depriving the district court of authority to reconsider the August 13, 2002 order. Rule 54(b) applies to judgments upon *multiple claims of relief* or involving multiple parties. It is Appellant's contention that the circumstances within its Complaint arise out of one common set of operative facts constituting a *single claim of relief.* Therefore, Rule 54(b) is not applicable to this case. Cases cited by Appellant in support of this proposition dealt with issues regarding the certifiability of an appeal and whether 54(b) was a basis for appellate jurisdiction. *Daleure v. Kentucky,* 269 F.3d 540, 543 (6th Cir. 2001); *General Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022, 1027 (6th Cir. 1994). Although Appellant's authority discussed what constituted single and multiple claims, the discussion was for the purpose of formulating a basis for appellate review. Determining the basis for appellate jurisdiction is not the issue before this court, but rather whether the district court may amend or reverse an interlocutory order on its own initiative when no final judgment has been entered.

As a practical matter, a plain reading of Appellant's First Amended Complaint clearly indicates more than *one claim of relief* notwithstanding whether the claims arise out of a single set of operative facts. Appellant requested injunctive relief, monetary compensation, an accounting of profits collected by Appellee, declaratory relief, as well as costs and attorney fees. (J.A. 14-15). The First Amended Complaint sets forth five counts: Federal Trademark Infringement under the Lanham Trademark Act (Count I); Federal Unfair Competition under the Lanham Act (Count II); Common Law Unfair Competition (Count III); Michigan Consumer Protection Act (Count IV); and, Accounting (Count V). (J.A. 11-14) The court's grant of partial summary judgment on the issue of infringement did not resolve the numerous issues necessary for entering a final judgment.

Accordingly, we find that the district court had authority to reconsider and modify its previous August 13, 2002 order in this matter.

**B.      Trademark Infringement**

Essentially, the Lanham Act prohibits the unauthorized use in commerce of any reproduction of a registered mark in connection with the sale, advertising or distribution of goods or services which could cause confusion relative to the goods or services.  15 U.S.C. §§ 1114, 1125.  In examining a request for equitable remedy under the Lanham Act, a trial court must first classify the mark at issue in order to determine if it is protected. *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1190 (6th Cir. 1988).  If it is determined that Appellant possesses a protected mark, then the trial court must decide if there is a likelihood of confusion between the protected mark and the allegedly infringing mark.  "The standard of proof needed to prevail in an [15 U.S.C. §1125(a)] action for injunctive relief [is] a showing of 'likelihood of confusion.'" *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 647 (6th Cir. 1982).  We have identified eight factors to be considered in determining whether likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods and services; (3) the similarity of the marks; (4) the evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care and sophistication; (7) the defendant's intent in selecting the mark; and, (8) the likelihood of expansion of the product lines using the mark. *Id.* at 648.

Under the Lanham Act, marks fall into one of the following categories:  (1) arbitrary and fanciful;  (2) suggestive;  (3) descriptive;  and (4) generic. *See Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 593 (6th Cir. 1989).  A mark's validity is premised upon the category into which it is placed. *Id.*  Arbitrary, fanciful, and suggestive marks generally are protected without any additional showing, while descriptive marks merit protection only if an

additional showing or secondary meaning can be established. *Id.* at 594; *Gougeon Bros., Inc. v. Hendricks,* 708 F. Supp. 811, 814 (E.D. Mich. 1988). Generic marks, generally do not merit any protection under the Lanham Act. A mark is descriptive "if it describes: the intended purpose, function or use of the goods; the class of users of the goods; a desirable characteristic of the goods; or the end effect upon the user." *Wynn Oil, supra,* 839 F.2d at 1190. Additionally, descriptive marks "describe a characteristic or ingredient of the article to which it refers." *Dranoff-Perlstein Assocs. v. Sklar,* 967 F.2d 852, 857 (3d Cir. 1992).

In determining whether "Leelanau Cellars" is a generic or descriptive term, a court must look at the availability of commonly used alternatives which would indicate that a mark is descriptive. *Id.* at 859. Generic terms generally do not have common alternatives, thus warranting a court's reluctance to grant protection to such trademarks because of a fear of giving one competitor the advantage of the exclusive use of a common term in an industry. *Id.* A ready availability of alternatives indicates that a party is using a descriptive, rather than a generic, mark in its operations. *Id.* The trial court held that there is no genuine issue that "Leelanau Cellars" is a descriptive mark. (J.A. 19)

For a descriptive service mark to be protected, Appellant must also demonstrate that its mark has a secondary meaning. Appellant must show that "the public identifies the trademark with a particular 'source' rather than the product." *Wynn Oil,* 839 F.2d at 1190. In determining whether a particular mark has developed a secondary meaning, a trial court must consider the following factors: (1) duration and manner of usage; (2) effort and expenditure of money toward developing a reputation; (3) survey evidence; (4) sales volume; and (5) extent of advertising expense. *See also Sprinklets Water Ctr., Inc. v. McKesson Corp.,* 806 F. Supp. 656, 661 (E.D. Mich.1992). With regard to the secondary meaning issue, the trial court below stated,

> A "mark's strength" is gauged by its "distinctiveness and degree of recognition in the marketplace." *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc,* 931 F.2d 1100, 1107 (6th Cir. 1991). Leelanau is a geographically descriptive mark which, without a showing of acquired secondary meaning, is inherently weak.

(J.A. 29). The district court found that the mark lacked strength in large part due to its ruling that the record is "completely devoid of any consumer survey ... that consumers understand 'Leelanau,' when used in connection with wine, to refer to [Appellant]." (J.A. 31).

During oral argument on appeal, Appellant asserted that the issues regarding the presumption of the mark's secondary meaning and the likelihood of confusion established by Appellant were un-rebutted by Appellee. Appellee did not dispute this fact during oral argument. This assertion is confirmed within the district court's August 13, 2002 order and in its February 14, 2003 order when it stated that in a prior ruling, it held: "[d]efendants failed to present any evidence to rebut the presumption of secondary meaning arising under §1052(f) for purposes of showing that the registration was invalid. ... [It also held] that application of the Sixth Circuit's eight-factor test, based upon the evidence in the record, demonstrated a likelihood of confusion between the two marks " (J.A. 28). *See* J.A. 217.

As previously stated, in order to demonstrate that a mark has a secondary meaning, a showing must be made that "the public identifies the trademark with a particular 'source' rather than the product." *Wynn Oil,* 839 F.2d at 1190. In determining whether a particular mark has developed a secondary meaning, the court should consider, among other factors, survey evidence. *Sprinklets,* 806 F. Supp. at 661. Since the issue of "secondary meaning" was not originally in dispute and because the district court originally ruled that there was no genuine issue of material fact on the likelihood of confusion issue, Appellant argues it did not introduce consumer survey evidence because likelihood of confusion was no longer an issue before the district court. After Appellant

learned in November 2002 that the production of consumer survey evidence was being considered by the district court and that the district court directed any such evidence to be filed by December 6, 2002, correspondence was sent to the district court requesting an extension due to counsel's required attendance at an out- of-town arbitration, attendance at an ongoing trial, and the Thanksgiving holiday. (J.A. 423-24). The district court entered an order on December 20, 2002, which indicated that any survey evidence submitted at that juncture would be considered additional evidence since it was not produced prior to the discovery deadline in January 2002 or by April 2002 when Appellant filed its summary judgment motion. (J.A. 19). The district court stated that it "would [not] have been available at the time of trial," and that the district court did not intend to allow the parties to develop additional evidence. (J.A. 19).

The district court rendered its February 14, 2003 decision to reconsider its August 13, 2002 order and to reverse its previous finding in favor of Appellant. (J.A. 20-41). We hold that because Appellant initially believed it was not required to produce consumer survey evidence and then was not afforded an adequate opportunity to do so when the district court determined such evidence was necessary, this matter must be remanded to the district court. *Employers Ins. of Wassau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 105 (6th Cir. 1995) (the losing party must "be afforded notice and reasonable opportunity to respond to all issues to be considered by the court."); *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986) (A district court may enter summary judgment *sua sponte* in certain limited circumstances "so long as the losing party was on notice and [it] had to come forward with all of [its] evidence."). In addition to the consumer survey evidence, all evidence bearing on the eight-factor test in *Frisch's* may be introduced to the district court to determine whether there are genuine issues of material fact with respect to the likelihood of confusion between the two marks. **IV.**

For the reasons set forth above, we hold that the district court erred in granting summary judgment to the Appellee. The matter is therefore **REVERSED** and **REMANDED** to the district court for further proceedings not inconsistent with this opinion. We do not reach any of the issues regarding whether other elements required to establish trademark infringement have been satisfied.