Filed 1/22/25  Storey v. Tahoe Sierra Eye & Optical CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| DYLON STOREY, | C098278 |
| Plaintiff and Appellant, | (Super. Ct. No. TCU207672) |
| v. | |
| TAHOE SIERRA EYE & OPTICAL, | |
| Defendant and Respondent. | |

Plaintiff Dylon Storey was employed by defendant Tahoe Sierra Eye & Optical (company) for five months.  After company terminated his employment, plaintiff sued for breach of contract, breach of the covenant of good faith and fair dealing, misrepresentation, and retaliation.  The trial court granted summary judgment in favor of company, and plaintiff appeals from the resulting judgment.

Plaintiff contends he showed triable issues of material fact that company agreed and falsely promised to employ him for the long term, specifically for a minimum number of years, falsely represented its expansion plans, and retaliated against him for

1

opposing rumors that he was having an affair with another employee.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Complaint*

According to plaintiff's unverified complaint, plaintiff was living and working in Colorado in January 2019 when company's CEO (CEO) contacted him regarding potential employment.  CEO told plaintiff that company was looking to establish a long-term relationship, lasting at least one year, with a Chief Optical Officer at company's practice in Truckee.

After meeting with plaintiff, owner extended him an offer.  The offer (1) stated that plaintiff would be employed as "Chief Optical Officer, Management, and Lead Optician," (2) offered a base annual salary of $105,000 with possible production bonuses, (3) provided for reimbursement of moving expenses, and (4) outlined plaintiff's responsibilities as including "stabilizing and growing the optical department" and the possibility of collaborating with company in opening other locations.  Following the offer, CEO discussed long-term growth of the business and income potential with plaintiff and stressed that owner was looking for a quick decision on the offer.

Based on company representations that the employment relationship would last at least one year, plaintiff accepted the offer in February 2019 and began working for company shortly thereafter.  In July 2019, company terminated his employment.

Plaintiff filed a complaint against company asserting three categories of claims.  First, asserting breach of oral and written contract and breach of the covenant of good faith and fair dealing implied in that contract (the contract claims), he alleged that company breached a contract to employ him for at least one year.  Second, he alleged that company made false representations that included but were not limited to:  (1) a base annual salary of $105,000; (2) the possibility of production bonuses; (3) reimbursement

2

of moving expenses; and (4) at least one year of employment. Plaintiff relied on those representations to his detriment such that company committed negligent and intentional misrepresentation and violated Labor Code section 970[1] (the misrepresentation claims). And third, plaintiff alleged that company retaliated against him in violation of the Fair Employment and Housing Act (Gov. Code, § 12940, et seq.; FEHA) by terminating his employment for protesting a sexually hostile work environment (the retaliation claim).

II

*Summary Judgment*

Company filed a motion for summary judgment, arguing plaintiff could not establish: (1) an agreement to employ him for at least one year; (2) a false representation; or (3) a reasonable belief that he opposed conduct prohibited by FEHA. In opposition to the motion, plaintiff purported to dispute company's asserted facts and cited to evidence in support of that purported dispute. The relevant evidence cited by both parties for purposes of the motion is discussed below and falls into two categories: (1) plaintiff's hiring and onboarding and (2) termination of plaintiff's employment.

A.    Plaintiff's Hiring and Onboarding: Company's Evidence

In January 2019, company was looking to hire a new lead optician. After locating a resume plaintiff had submitted a few years before, CEO emailed plaintiff to see if he was interested. After CEO, owner, and owner's wife interviewed plaintiff, CEO sent plaintiff an employment offer on January 30, 2019. The offer explained the position's duties and compensation but did not state how long the employment would last. Company understood it was offering at-will employment consistent with company policy.

---

[1] Labor Code section 970 "prohibits employers from inducing employees to relocate and accept employment by way of knowingly false representations regarding the kind, character, or existence of work, or the length of time such work will last." (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 349.)

3

Company then paid for plaintiff to travel to Truckee to meet with CEO, owner, and owner's wife. They met with plaintiff and expressed their interest in hiring someone who would integrate in the local community and join company for the long term. But they never negotiated any minimum amount of time that plaintiff was guaranteed to be employed.

In a deposition, company asked defendant what he understood he was being promised in terms of length of employment. Plaintiff responded that his understanding was "essentially indefinite employment." He confirmed that company represented "it was going to be a long-term position" and stated that he felt like the discussions "implied and essentially offered a definite period of [] employment." When asked how long he was hoping the employment would be, he responded "[a] minimum of five years. But the expectation was that [his] girls would complete high school."

When plaintiff arrived in Truckee to start working at company's office, he received an employee handbook and signed a handbook acknowledgement (the acknowledgment). The acknowledgement stated that plaintiff (1) received the handbook; (2) agreed that his actions as an employee were governed by company policies and it was his responsibility to read the handbook; and (3) agreed that nothing in the handbook established "a commitment or guarantee by [c]ompany of [his] continued employment." The acknowledgement also provided that it "supersede[d] any and all prior understandings, agreements and/or promises that conflict with such at-will status" and specified company's right to change its policies at its sole discretion, except for the at-will policy, which could only be changed by written agreement between the employee and company president. One of the policies in the handbook specified that company "employs persons on an at-will basis" and may terminate an employee for any reason and without advance notice.

4

B.    Plaintiff's Hiring and Onboarding:  Plaintiff's Evidence

Plaintiff argued that company made representations to him regarding the length of employment before he relocated and signed the acknowledgment, but those representations were false.  His supporting evidence included:  (1) company's representations of long-term employment during his interview in-person visit; (2) CEO's view of "long term" as meaning "longer than two years"; (3) owner's view that "long term" would hopefully be longer than a year and hopefully five years; and (4) plaintiff's testimony that company needed immediate help when it hired him but then reached out to a replacement optician for less money plaintiff saved the business.  Plaintiff also filed a declaration in which he stated that: (1) before accepting an offer, he made it clear to owner and CEO that "any employment relationship with [company] needed to last at least . . . five years," and CEO and owner agreed; and (2) he understood company to be promising long-term employment, lasting indefinitely, and at least until his daughters completed high school.

On February 5, 2019, plaintiff completed new hire paperwork, none of which made any reference to at-will employment.  He started working remotely for company the next day but was not presented with the acknowledgment until he relocated to Truckee and started working in the office on February 25, 2019.

Plaintiff also asserted that during the hiring conversations, company misrepresented its intent to expand the business.  For example, plaintiff expressed concern during the interview process that company could not support the salary he wanted without serious, concrete expansion plans.  But CEO and owner assured plaintiff that company had plans, the "financial ability to expand its business to other locations," and the equipment to offer lab services to other businesses.  Plaintiff also pointed to owner's admission that owner discussed expanding the business during discussions of the employment opportunity with plaintiff.

5

Plaintiff argued that evidence showed these expansion representations were false, including the following: (1) plaintiff's understanding that company could not sustain a higher-than-average salary without serious expansion plans; (2) plaintiff's testimony that he was too expensive and company just needed to fix their problem; (3) CEO's testimony that she had never seen a company business plan; (4) plaintiff learning shortly after starting employment that a second location was not financially feasible for company; and (5) the fact that company never opened a second location or started offering lab services to other business.

C.      Termination of Plaintiff's Employment: Company's Evidence

Two to three months after plaintiff started working for company, CEO heard employees were feeling uncomfortable about his behavior with respect to company's office manager (manager). The employees told CEO that plaintiff was interested in manager and would openly flirt with her. At one point, a front office employee, whom we refer to as K, complained to CEO that plaintiff was making K uncomfortable because he was hanging out at the front desk where K and manager worked, openly flirting with manager, and making inappropriate comments. CEO and owner also witnessed some of the behaviors between plaintiff and manager.

After about a month or two of K's employment, plaintiff observed K was having performance issues. Plaintiff recommended monitoring and evaluating K and starting a performance evaluation program. Owner was aware that K had previously complained to CEO about plaintiff's behavior with manager, so owner was concerned that plaintiff's negative feedback about K was not neutral.

In June 2019, company arranged for CEO, owner, manager, and plaintiff to attend a business conference in Atlanta. Plaintiff and manager arrived late to pick up CEO, causing them to miss a flight and a day of the conference. Owner and CEO thought the reason for the tardiness was odd and observed other behaviors by plaintiff and manager during the trip that made them question the relationship between plaintiff and manager.

6

One day at an impromptu formal meeting after work, CEO brought up a rumor about an affair between plaintiff and manager (the affair rumor). Plaintiff told CEO the affair rumor was false, "out of line," and needed to stop. A few minutes later, CEO asked plaintiff if he was bonding with the other staff, and plaintiff responded that he and manager had "been bonding 2-3 times per week."

Plaintiff told owner and the other managers that he believed K was spreading the affair rumor. To plaintiff's knowledge, K started the affair rumor in retaliation for plaintiff's efforts to manage K's performance. Owner did not understand plaintiff to be complaining about sexual harassment or a hostile work environment.

In July 2019, K told owner she was going to resign because plaintiff's behavior was making her uncomfortable.

Owner knew that plaintiff was planning to move his family from Colorado to Truckee, but owner concluded plaintiff was probably involved in some form of relationship with manager that was clouding his judgment and causing him to engage in disruptive behavior that negatively affected the practice. Owner and CEO agreed it was best to terminate plaintiff's employment before he moved his family out from Colorado. Company had recently started recruiting another optician as part of its expansion plans and decided that the new hire could take over. Company formally terminated plaintiff's employment on July 12, 2019.

D.     Termination of Plaintiff's Employment:  Plaintiff's Evidence

Plaintiff disputed company's evidence to the extent it suggested that K was not creating a hostile work environment or that plaintiff did not engage in FEHA-protected activity when he requested that company make the affair rumor stop. In support, he cited the evidence regarding the meeting in which he told CEO that the affair rumor needed to stop. Also, according to his declaration, he told CEO that this type of conversation was inappropriate and toxic for the work environment and needed to stop as plaintiff found it

very offensive. CEO testified that she understood plaintiff was offended by the affair rumor.

## III

### *Ruling and Appeal*

The trial court granted company's motion for summary judgment. As to the contract claims, it treated the acknowledgment as an express agreement to at-will employment that could not be overcome by proof of an implied contrary understanding.

For the misrepresentation claims, the court read plaintiff's complaint as asserting four factual theories: (1) salary, (2) production bonuses, (3) moving expenses, and (4) length of employment. The court concluded that company met its burden to show plaintiff could not prove the requisite falsity for these theories and plaintiff did not show otherwise. Specific to the length of employment theory, the court sustained company's objection to the statements in plaintiff's declaration that company agreed to definite employment lasting at least five years because those statements contradicted plaintiff's earlier deposition testimony and an allegation in plaintiff's complaint. And the court could not locate "any portion of [plaintiff's] deposition where he indicate[d] that [company] offered him a definite period of employment, whether one or five years." Instead, plaintiff referenced only a "feeling that there was an *implied* definite minimum period of employment," but a misrepresentation requires an affirmative statement.

The court also declined to consider plaintiff's theory that company made misrepresentations regarding its business expansion plans. It concluded that this unpled theory could not be used to resist summary judgment. And it sustained company's objection based on lack of foundation to plaintiff's statement that he understood a higher-than-average salary was not sustainable for company without expansion plans.

As to the retaliation claim, the court found nothing in the record demonstrating that plaintiff "either held a good-faith belief that he was opposing unlawful, discriminatory conduct by [company] or elsewise that his comments to [company]

sufficiently conveyed to them . . . concerns that unlawful, sex- or gender-based discrimination [was] afoot."

Plaintiff timely appealed the ensuing judgment.

DISCUSSION

I

*Standard of Review*

Summary judgment is appropriate if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  We review an order granting summary judgment de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)

In performing our review, we apply the same three-step process as the trial court. (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 963.)  "[W]e first look to the pleadings to identify the elements of the causes of action for which relief is sought."  (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159.)  As to each claim as framed by the complaint, the defendant must show that one or more elements of the claim cannot be established or that there is a complete defense to that claim.  (Code Civ. Proc., § 437c, subd. (p)(2).)  If the moving papers make that showing, the burden shifts to the plaintiff to show a triable issue of material fact.  (*Ibid.*)

 In determining whether the parties have met their respective burdens, we consider all the evidence and all the inferences reasonably drawn from the evidence, and we view the evidence and inferences in the light most favorable to the opposing party.  (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 843.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Id.* at p.  850, fn. omitted.)

9

## II

### *The Contract Claims*

Plaintiff contends the trial court erred as to his claims for breach of contract and breach of the covenant of good faith and fair dealing. Specifically, he contends he met his burden to show a triable issue of fact that defendant hired him for a minimum term of one to five years. We disagree.

There is a statutory presumption that employment is terminable at will. (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1386 (*Eisenberg*); see Lab. Code, § 2922.) That presumption can be rebutted only by evidence of an express or implied agreement between the parties that the employment is for a fixed term or will be terminated only for cause. (*Eisenberg*, at p. 1386.) But "most cases applying California law . . . have held that an at-will provision in an *express written agreement*, signed by the employee, *cannot* be overcome by proof of an implied contrary understanding." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 340, fn. 10 (*Guz*).) We agree with those cases, and they are dispositive here.

Company provided evidence that plaintiff agreed to at-will employment via written agreement. By signing the acknowledgement, plaintiff agreed his actions were governed by company policies contained in the company handbook and those policies included the policy that company employees are at-will. Plaintiff further agreed that nothing in the handbook established or intended to establish a guarantee of continued employment. This was sufficient to meet company's burden to show that plaintiff could not prove an implied contract for a fixed term of employment.

Plaintiff contends extrinsic evidence can be offered to show that he and company had an implied understanding of fixed employment because the acknowledgement is not an integrated agreement. We disagree with plaintiff for two reasons.

First, we reject plaintiff's integration assessment. The acknowledgment specified the immutable nature of company's at-will policy by providing that the policy could be

10

changed only by written agreement between an employee and company president. Also, the acknowledgement specified that it superseded all prior understandings or promises. These terms lead to a single conclusion: "the parties intended that there *would be no other agreement* regarding termination *other than* that set forth" in the handbook unless there was another written agreement to the contrary signed by company and plaintiff. (*Slivinsky v. Watkins-Johnson Co.* (1990) 221 Cal.App.3d 799, 805; see *Malmstrom v. Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 315 [effect of supersession language]; *Esbensen v. Userware Internat., Inc.* (1992) 11 Cal.App.4th 631, 637 [where parties execute a written agreement following negotiations, that agreement is at least partially integrated and parol evidence cannot be admitted to contradict the terms agreed to in the writing].) Plaintiff supplied no such contrary written agreement.

And second, " ' "there cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." [Citations.] The express term is controlling even if it is not contained in an integrated employment contract.' " (*Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33, 38; see *Wagner v. Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1393-1394.) This means plaintiff's express acknowledgment of his at-will employment precluded the existence of an implied contract guaranteeing his employment for a particular term. (*Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 630.) For these reasons, we conclude that plaintiff failed to meet his burden to show a triable issue of fact that company agreed to employ him for a specific term.

This conclusion means plaintiff's breach of the implied covenant of good faith and fair dealing claim also fails. In plaintiff's view, company breached the covenant by interfering with his right to receive the benefits of his contract with company to employ him for a minimum period. But as an at-will employee, plaintiff "cannot use the implied covenant to create a for cause employment contract where none exists." (*Eisenberg, supra*, 74 Cal.App.4th at p. 1391.) The covenant "cannot supply limitations on

11

termination rights209 to which the parties have not actually agreed." (*Guz, supra*, 24 Cal.4th at p. 342.)

III

*The Misrepresentation Claims*

Plaintiff contends the trial court erred with respect to two categories of representations that falsely induced him to accept company's employment offer: (1) company's length of employment representations and (2) company's business expansion representations.[2] We address each of those categories in turn.

A.      Length of Employment Representations

In moving for summary judgment, company presented evidence that it honestly represented an interest in hiring plaintiff as a long-term employee but never specifically represented a guaranteed minimum term of employment. This was sufficient to shift the burden to plaintiff to show a triable issue of material fact that company made a false representation as to length of employment. (*White v. Smule, Inc., supra*, 75 Cal.App.5th at p. 350 [Labor Code section 970 violation requires a false representation]; *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255 [intentional and negligent representation require a false representation].) On appeal, plaintiff insists that company falsely promised him employment for at least five years. He contends the trial court erred by refusing to consider evidence of that promise presented in plaintiff's declaration submitted in opposition to company's motion for summary judgment. We are not convinced.

Although we review summary judgment rulings de novo, the burden still falls on plaintiff to demonstrate reversible error. (*LaBarbera v. Security National Ins. Co.* (2022)

---

[2] Fraudulent inducement of employment causing damages unrelated to the employee's discharge is an actionable tort regardless of whether the employee is at will. (*Agosta v. Astor* (2004) 120 Cal.App.4th 596, 607.)

12

86 Cal.App.5th 1329, 1339.) Here, the trial court excluded the statements in plaintiff's declaration because they contradicted plaintiff's earlier deposition testimony and an allegation in plaintiff's complaint. (See *Thompson v. Williams* (1989) 211 Cal.App.3d 566, 573 ["[a]fter-the-fact attempts to reverse prior admissions are impermissible because a party cannot rely on contradictions in his own testimony to create a triable issue of fact"]; *Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1129 [a plaintiff cannot create a triable issue through declarations that contradict the complaint's factual allegations].) On appeal, plaintiff quotes the relevant statements in his declaration, deposition, and complaint and then asserts, in cursory fashion, that the statements do not contradict each other. He does not set forth the legal standards that apply to this issue nor does he explain *why* there is no contradiction. (*Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 27 (*Menges*) [appellant must present meaningful legal analysis supported by citations to authority].) In the deposition, when plaintiff was asked what he was promised in terms of length of employment, he responded that he was *promised indefinite* employment. In the same deposition, he testified that his discussions with company *implied definite* employment. But then, after company filed its motion for summary judgment, plaintiff submitted a declaration stating he was *promised definite* employment for a term of five years. The original promise of indefinite employment now turned to a promise of definite employment. The contradiction between the deposition and declaration statements is clear, and plaintiff has not offered any explanation for the inconsistency. (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 658.) In the absence of reasoned argument supported by authority, we consider this issue forfeited. (*In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 255.)

Plaintiff also contends the trial court failed to consider other evidence showing that company represented that he would be employed for two to five years. But rather than describing the relevant evidence, plaintiff cites to several spans of pages in the

record (several of which are to plaintiff's opposing separate statement, one of which spans 62 pages, another of which is to plaintiff's opposing separate statement, and another of which is to argument opposing summary judgment), such that we comb through the pages and make his case for him. (*Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 694, fn. 1.) This is not something we do. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546.) Also, contrary to plaintiff's contention, the trial court did consider plaintiff's cited evidence and concluded plaintiff did not show the type of assertion required to state a claim for misrepresentation. Plaintiff does not challenge that conclusion. On independent review, the only relevant evidence plaintiff cites in his opening brief is his testimony that he hoped and wanted the employment to last at least five years and expected it to last until his girls completed high school. He does not explain, and we fail to see, how the testimony of *his* hope, desire, and expectation shows that *company* represented a definite term of employment. While there is authority that an intentional representation can be implied by conduct or inferred from the circumstances (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 839 [conduct]; *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal. App. 3d 145, 151 [circumstances]), plaintiff does not cite that authority, nor does he cite or analyze evidence of conduct or circumstances that indicate company represented a minimum term of employment rather than a hope for a long term employee. For these reasons, plaintiff's contention regarding company's purported representation of a definite term of employment is deficient.

Setting aside the definite term issue, plaintiff contends company made false representations that his employment would be long-term. This contention misses the mark too. There is no dispute that company represented an intent to hire plaintiff for the long term. But plaintiff's opening brief never explains how there was a triable issue of fact that company's long-term representations were false at the time they were made. In reply, he contends, without analysis or citation to authority, that such falsity is shown

14

because company clearly intended to offer only at-will employment. This bare contention is insufficient. (*Menges, supra*, 59 Cal.App.5th at p. 27.) And we reject the suggestion that an at-will employer who expresses an intent to hire a long-term employee is potentially committing fraud without evidence that the employer made other specific assurances of job security or intended to hire for the short term. (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 636 [employer made assurances of employment so long as employee performed but was planning an operational merger that would eliminate employee's position and had no intention of retaining employee so long as he performed adequately]; *Finch v. Brenda Raceway Corp.* (1994) 22 Cal.App.4th 547, 553 [employer's representation of lifetime employment to plaintiff directly contradicted by its representation to others that it was hiring the plaintiff only temporarily]; *Havens v. C&D Plastics, Inc.* (Wash. 1994) 876 P.2d 435, 444 [employer statement during hiring negotiation that it is looking forward to long and prosperous future with employee is consistent with general expectation present in any such negotiation].)[3]

B.      Business Expansion

In attempting to dispute company's asserted fact that it hired plaintiff hoping he would be a long-term employee, plaintiff claimed that company misrepresented its intent to expand the business, citing his understanding that company could not support a higher-than-average salary without serious expansion plans. The trial court declined to consider this claim because it was not pled in plaintiff's complaint. The court also sustained company's evidentiary objection to plaintiff's understanding as lacking foundation. As we explain below, we agree with the trial court that this category of representations

---

[3] On appeal, plaintiff does not cite *Finch* for its facts, and he does not contend that company's long-term assurances were contradicted by evidence of short-term intent. To the extent he made that claim in the trial court, we consider it forfeited on appeal. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)

15

constituted an unpled basis for liability that was not properly before it on summary judgment. Because we reach that conclusion, there is no need to reach the merits of company's evidentiary objection.

Pleadings set the boundaries of the issues to be resolved by summary judgment. (*Conroy v. Regents of University of California, supra*, 45 Cal.4th at p. 1254.) A defendant moving for summary judgment " 'need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' " (V*ulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 255.) " 'If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion.' " (*Ibid*.)[4]

Plaintiff contends his pleading did not require amendment to cover the business expansion representations. He points to the allegations in the factual background of his complaint that (1) company represented that plaintiff's responsibilities would include "stabilizing and growing the optical department" and "collaborating in opening other medical/optical locations" and (2) CEO discussed "specific business plans with [plaintiff], i.e., long-term growth of the business." He contends these allegations were incorporated into his misrepresentation cause of action and gave company fair notice of plaintiff's theory, particularly because the misrepresentation cause of action specified that company's misrepresentations were not limited to those explicitly listed. We disagree.

---

[4] Plaintiff requested leave to amend the complaint to conform to proof during the hearing on the motion for summary judgment. The trial court did not expressly rule on the request. Because plaintiff does not address this issue in his briefing, we deem forfeited any challenge to a ruling on the request to amend. (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 586, fn. 5 (*Soria*).)

16

Although we generally construe a pleading broadly in determining whether issues raised by a plaintiff in opposing summary judgment are encompassed by the controlling pleading, "the pleading must allege the essential facts ' " 'with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source[,] and extent of [the] cause of action.' " ' " (*Soria, supra*, 5 Cal.App.5th at p. 585.)  Plaintiff's complaint does not meet this standard with respect to the business expansion representations.  Wholesale incorporation of the general allegations of his complaint and phraseology like "including, but not limited to" in the misrepresentation cause of action does not put a reasonable person on notice that plaintiff was alleging that defendant's business expansion representations were false.  (See *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.)  The trial court's ruling was based on a fair reading of the complaint.  (See *ibid*.)

IV

*The Retaliation Claim*

Plaintiff contends he showed triable issues of fact that he reasonably and in good faith believed the affair rumor constituted a sexually hostile work environment under FEHA.  We disagree.

FEHA forbids an employer from firing an employee because the employee opposed practices forbidden under FEHA.  (Gov. Code, § 12940, subd. (h).)  Such employee opposition is covered by this provision not only when the employee opposes conduct that ultimately is determined to be forbidden, but also when the employee opposes conduct that the employee reasonably and in good faith believes to be forbidden.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043 (*Yanowitz*).)  At issue here is plaintiff's reasonable and good faith belief that he was opposing prohibited conduct.

The reasonableness of an employee's belief "has both a subjective and an objective component." (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 381.)  A " 'plaintiff must not only show that he *subjectively* (that is, in

17

good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.' " (*Id*. at pp. 381-382.) The objective reasonableness must be measured against existing substantive law. (*Id*. at p. 382.) The substantive law on a sexually hostile work environment requires a plaintiff to show harassment *based on sex*. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608 [adopting federal case law for hostile environment sexual harassment claims under FEHA]; *Meritor Sav. Bank, FSB v. Vinson* (1986) 477 U.S. 57, 67.) This law undermines the reasonableness of plaintiff's belief.

Plaintiff contends his belief was objectively reasonable because "comments about a woman's sexual promiscuity within the workplace can and does create a hostile work environment and is because of sex." But he does not directly cite supporting authority, instead referring us to a "Compendium of Authorities" submitted to the trial court. That compendium consists of a law review article theorizing that there is always a gendered aspect to sexual rumors about a woman's promiscuity. Plaintiff does not call out any authorities cited in the article or explain why those authorities or the article's arguments apply here. (*Menges, supra*, 59 Cal.App.5th at p. 27.) Plaintiff's conclusory contention fails. (*Ibid*.)

In addition, plaintiff has not offered facts indicating that the affair rumor was demeaning to manager based on her gender, reflected gender-based stereotyping, or suggested that manager received differential treatment in the workplace because she allegedly had a relationship with plaintiff. (See *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 468 [favoritism from affair in workplace can constitute hostile work environment where it conveys message that engaging in sexual conduct is way to get ahead or that managers view women as " ' "sexual playthings" ' "]; *Parker v. Reema Consulting Services, Inc.* (4th Cir. 2019) 915 F.3d 297, 302-304 [rumor that female subordinate had sex with male superior to obtain promotion]; *Pasqua v. Metropolitan Life*

*Ins. Co.* (7th Cir. 1996) 101 F.3d 514, 517 (*Pasqua*) [no hint in record that rumors were based on the plaintiff's sex].) Company's evidence shows that CEO knew of a rumor of an office romance between plaintiff and manager. While related to the topic of sex, that evidence does not, on its own, lead to the inference that the affair rumor was based on the sex or gender of either plaintiff or manager. (*Oncale v. Sundowner Offshore Servs.* (1998) 523 U.S. 75, 80 [the question is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed"]; *Lyle v. Warner Brothers Television* (2006) 38 Cal.4th 264, 280 [disparate treatment of an employee on the basis of sex is the essence of a sexual harassment claim]; see, e.g., *Jew v. University of Iowa* (S.D. Iowa 1990) 749 F.Supp.946, 958; *Spain v. Gallegos* (3d Cir. 1994) 26 F.3d 439, 448.) And plaintiff did not offer evidence suggesting otherwise. Indeed, plaintiff's own testimony revealed his belief that the affair rumor was motivated by K's dissatisfaction with plaintiff's negative reviews of her work, and plaintiff did not offer contrary evidence in opposition to company's motion.[5] Nothing in the evidence suggests that the affair rumor was based on any disparate consideration of sex or gender.

In his reply brief, plaintiff suggests there was evidence showing that company *discriminated* against him based on his gender. Specifically, he points to owner's decision to terminate plaintiff's employment after concluding plaintiff was probably involved in a relationship with manager. Plaintiff contends this evidence shows that employer attributed fault only to the male participant of the alleged relationship even though a female was also involved. This contention is not properly before us. We do not

---

[5] Plaintiff's effort to undermine this testimony in his reply brief is unsuccessful. While the motive of the harasser may not be the focus of a harassment cause of action (*Mogilefsky v. Superior Court* (1993) 20 Cal.App.4th 1409, 1418), whether plaintiff honestly believed the affair rumor was based on sex or gender *is* relevant for purposes of an opposition-based retaliation claim. (*Yanowitz, supra*, 36 Cal.4th at pp. 1043-1044.)

consider contentions made for the first time on reply (*Shih v. Starbucks Corp.* (2020) 53 Cal.App.5th 1063, 1071, fn. 4), and plaintiff never alleged a claim in his complaint for discrimination or retaliation for opposing discrimination. (*Jacobs v. Coldwell Banker Residential Brokerage Co., supra*, 14 Cal.App.5th at p. 444; *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 705 [discrimination and harassment are distinct wrongs].)

Based on this analysis, we see no merit in plaintiff's "reasonable belief" contention. A reasonable trier of fact could not conclude plaintiff reasonably believed the affair rumor was based on his gender or that of manager. (*Pasqua, supra*, 101 F.3d at p. 518 [no reasonable belief without evidence that rumors were 30motivated by disparate consideration of the gender of the affair participants]; *Kelly v. Howard I. Shapiro & Associates Consulting* (2d Cir. 2013) 716 F.3d 10, 15-16.) Although the reasonable belief standard allows for the limited knowledge most employees possess about their legal claims (*Moyo v. Gomez* (9th Cir. 1994) 40 F.3d 982, 985), the cases in which courts have allowed mistaken beliefs in law to proceed involve situations in which the law is unsettled, has recently changed, or the facts are close to conduct prohibited by the law. (See, e.g., *Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 209 [at time of conduct occurred, two appellate courts had concluded the conduct constituted violation of the FEHA]; *Drinkwater v. Union Carbide Corp*. (3d Cir. 1990) 904 F.2d 853, 865-866 [plaintiff's reliance on case law that was later overruled established her reasonable and good faith belief]; *Clover v. Total System Services, Inc.* (11th Cir. 1999) 176 F.3d 1346, 1351 [conduct described does not come anywhere near sexual harassment].) Plaintiff's evidence does not present any of those situations.

## DISPOSITION

The judgment is affirmed.  Company is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
MESIWALA, J.


We concur:


/s/
ROBIE, Acting P. J.


/s/
MAURO, J.